21  185
58  327

## Lyon *against* Lyon.

Where, on the application of *A* to the superior court, shewing that a divorce had been granted in her favour against *B*, and a certain sum allowed to her, as alimony, to be paid to her, by *B*, within a certain time; averring, that *B*, at the time specified for payment, owned a much larger amount of property, that such time had elapsed, and that payment had been demanded and refused ; averring also, that he had concealed and fraudulently disposed of his property, to evade payment ; praying, among other modes of relief, for an attachment against *B* for contempt ; it was held, 1. that this application was to be regarded, not as an original and independent bill for aid or relief, but as a petition connected with and a part of the proceedings in which the divorce was granted and the alimony decreed ; 2. that in order to bring such petition within the cognizance of the court, regular service thereof is not requisite, but only such reasonable notice as the rules of practice may require ; 3. that consequently, a plea in abatement of such petition, founded on defective service, by reason of a variance between the original and the copy left in service, and the pendency of an action previously brought to recover the same debt, was unavailable ; 4. that the jurisdiction of the superior court on the subject of divorce and alimony, with incidental matters, is of a special character ; the form and manner in which the proceedings are to be

commenced and prosecuted being similar to those in suits in equity ; 5. that in the allowance of alimony to the wife, the court does not decree it as a *debt* due to her, by her late husband, but as a part or proportion of his estate, fixed by the court, and appropriated to her, and to which she thereupon becomes legally entitled ; 6. that such a decree, in its nature and effect, is the same as that of an ordinary decree of a court of equity for the specific performance of any other act ; 7. that the facts alleged in this petition being proved, the court directed an attachment for contempt to issue against *B*, on his not shewing cause to the contrary, on a rule for that purpose.

*It seems* that in the service of a bill in chancery, by copy, a merely verbal variance between the original and copy, without materially changing the sense, would not be a sufficient ground of abatement.

THIS was an application to the superior court, as a court of chancery, to carry into effect a previous decree of that court, divorcing the plaintiff from the defendant, and granting to the plaintiff 5,000 dollars, as alimony. The plaintiff also prayed for a discovery and for an injunction.

The application alleged, that the petitioner brought a petition to the superior court, held at *Danbury*, on the first *Tuesday* of *October*, 1849, praying for a divorce from her then husband *Jarvis Lyon*, and for alimony out of his estate, which was duly served on him ; that the parties appeared, and, at the term of the court on the second *Tuesday* of *February*, 1850, a decree of the court was passed, divorcing the petitioner from her said husband, and ordering, that he should pay to her, within sixty days from the 27th day of *March*, 1850, the sum of 5,000 dollars, as alimony ; that on the trial of such cause, the respondent was sworn as a witness, who admitted, that he had in his possession personal property to the amount of 15,000 dollars, and over that sum ; that the decree of the court was intended as an assignment of a portion of said amount in the hands of the respondent, to be her own proper estate, to which she was to be entitled, according to the statute and by virtue of said decree ; that it was the duty of the respondent to deliver over to the petitioner said sum of 5,000 dollars, according to the decree ; yet he, in contempt of said order of the court, though particularly requested, on the day specified in said order, then, and at all times since, wholly neglected and refused so to do ; that at the time of the passing of said decree, he had placed his property in such a situation that he could withdraw it from all liability to be taken on civil process ; that he has

since, with the design of disobeying said order, and in contempt of the court, either converted his property into money, which he keeps concealed, or has fraudulently assigned and disposed of it, so that it cannot be found or levied upon, or taken on civil process; that ever since the passing of said decree, he has been, and still is, abundantly able to deliver to the petitioner said sum of 5,000 dollars; that, as she verily believes, large portions of said amount of 15,000 dollars are now in the hands of some person or persons, unknown to her, who hold the same without consideration, or are accountable therefor to the respondent; that other large portions thereof have been converted by him into stocks, or other real or personal estate to her unknown, which persons and property he has, in contempt of said order, and with a design to defraud the petitioner, concealed from her; that as she has been informed and verily believes, he has boasted that he will disregard said order, and that if he should be confined in gaol for the non-payment of said sum of money, he will spend his life in prison rather than comply with said order.

The petitioner further averred, that it was impossible for her to ascertain, without the disclosure of the respondent, under oath, what he has done with the property which he had, at the time of the passing of said decree, nor in what condition, nor in whose hands, it then was. She therefore prayed, that the respondent should be required to disclose fully, under oath, what disposition he had made of said property, and whose it then was.

The petitioner further prayed the court to cause said decree to be carried into full effect, by assigning and transferring to her such amount of the property of the respondent as would make said sum of 5,000 dollars, with interest thereon; or by causing him to be committed to prison, for his contempt, in refusing to obey said order, in violating the duty which was thereby imposed upon him, and in treating with disrespect the authority of this court; concluding with a general prayer for such other relief as should be just and proper.

To this application the respondent pleaded in abatement, 1st, the previous commencement and existing pendency of an action on the case for the same matter, cause and thing,

and between the same parties, as the object of and the parties to this proceeding; 2dly, a variance between the copy of this petition left in service and the original petition. This variance was merely verbal, not materially affecting the notice thereby given to the party.

To the plea in abatement the petitioner demurred.

On the hearing of the petition, the court found the allegations therein contained regarding the decree of divorce, to be true. The court further found, that when the money, which, by that decree, was to be paid to the petitioner, became due, it was demanded by her of the respondent, and that he then said, that he had no money for her; and when inquired of by her, when he would pay the same, he said, he should not pay it, till he got ready. When requested by her to pay the interest on it, he neglected and refused so to do. The court further found, that when the petition for a divorce was served upon him, he held a note against *Lewis C. Segee* for 6,723 dollars, payable to the respondent, on demand, with interest, which note was well secured by mortgage of real estate in the city of *Bridgeport;* that on the 1st of *October*, 1849, this note was taken up, and a new note substituted, for the sum of 7,457 dollars and 57 cents, payable to the order of the respondent twelve months after date, which was secured in like manner; that at the passage of said decree, the respondent also held a negotiable note for about 5,000 dollars against *H. R. Harrall*, a responsible citizen of *Bridgeport;* that on the 11th of *July*, 1850, said mortgaged premises were quit-claimed, by the respondent, to said *Segee*, and the note paid; that the attorneys of the petitioner have, ever since said sum of money become due, made diligent search for property to secure said claim, but without success; and that the petitioner is, and has been, ever since said divorce, wholly destitute of money and means, and also is without relatives able to furnish her with money, or support; that when said decree was passed, there was an injunction and a petition for an injunction, pending before this court, which are still pending.

The case was reserved for the advice of this court on the questions contained therein; which court were to draw any legal inferences from the evidence and facts contained in the foregoing finding. The questions presented particularly

were : 1st, What judgment ought the supreme court to render on the plea of abatement?

2dly, Upon the facts found and admitted, is the petitioner entitled to relief; and if she is, what decree ought to be passed, or what order made?

3dly, Is the petitioner entitled to the disclosure prayed for, in her petition; and if so, to what extent?

*Dutton* and *Loomis*, for the plaintiff, contended, 1. That the plea in abatement was insufficient. First, the substitution in the copy of a different word from that in the original, without altering the meaning, does not vitiate the service. The party has the same *notice*, that he would have, if the copy had been exactly literal. Secondly, the pendency of an action at law to recover a debt, will not abate an application to a court of chancery for aid in carrying into effect its decree, although the latter, if effectual, will supersede the necessity of pursuing the former, in any other way. 2 *Sto. Eq.* § 889.   *Colt* v. *Partridge*, 7 *Metc.* 570.   *Blanchard* v. *Stone*, 16 *Verm. R.* 234.   8 *B. Monroe*, 428.   3 *Gill & Johns.* 185.   A mortgagee may bring three suits, at the same time, to obtain satisfaction of the same debt. 2 *Sw. Dig.* 198.   A proceeding *in rem* to enforce a mechanic's lien, cannot be pleaded in abatement of an action for work and materials.   *Crawford* v. *Slade*, 9 *Ala.* 887.

2. That upon the merits, the plaintiff is entitled to the relief she seeks.   A court of chancery can enforce its decree, by writ of injunction, or by process of contempt.   The power of the court is, and of necessity must be, coëxtensive with its jurisdiction over the subject matter. *Kershaw* v. *Thompson* & al. 4 *Johns. Ch. R.* 609.   *Ludlow* v. *Lansing*, *Hop. Ch. R.* 231.   *Valentine* v. *Teller*, *Id.* 422.   *Richardson* v. *Jones*, 1 *Gill & Johns.* 262.

3. That a court of chancery has power to aid the execution of the judgment of a court of *law*.   It may compel a judgment debtor to *discover* his property, and put it within the reach of an execution. 2 *Sw. Dig.* 161.

4. That it becomes immaterial, therefore, to enquire, whether the allowance of alimony, is in the nature of a judgment at law, or a decree in chancery; for in either case, the court will make it *effectual*.   If *ordinary* process will

*Fairfield,*
June, 1851.

Lyon
*v.*
Lyon.

not answer the purpose, a more efficient remedy will be applied.

*Hawley,* (with whom was *Morris,*) for the defendant, contended, 1. That the plea in abatement was sufficient. First, the object, and whole object of *both suits,* was the same—to collect the debt. That was clearly the whole object of *the first:* every thing called for in this, is for the same purpose. Could a judgment creditor have *debt on judgment* and *case,* at the same time? Or after recovering the full *debt* in *case,* have *assumpsit* or debt for the debt? See 1 *Conn. R.* 154. It matters not that the *forms* of action differ, the *object* of *both* being the same. 1 *Sw. Dig.* 610. Secondly, the variance was *material.*

2. That the plaintiff was not entitled to the interposition of the court. In the first place, chancery can in no way add to or modify the decree of the superior court. If it could ever have been done, it is too late now; but it could never have been done. The superior court, in divorce cases, acts as a *court of law.* The *subject matter* is not of *chancery cognizance;* and besides, the court had power in *divorce cases,* long before it *had any chancery* powers at all. 4 *Conn. R.* 72. 2 *Tidd,* 843, 4. and cases cited. The *form* of proceeding does not give *character* to the case. *Hinman* v. *Taylor,* 2 *Conn. R.* 357. Secondly, the defendant cannot be enjoined not to dispose of his property. No such injunction is ever issued, except in relation to *specific property,* which is *the subject of controversy.* 1 *Mad.* 130. 2 *Sto. Eq.* 905, 6, 7, 8. 953. 956, 7. At all events, an execution should first have issued, and efforts been made to find property: the party should have done every thing in her power to do. This is not at all like those cases where the petitioner has a *lien*—either by *act of the party,* or by *operation* of *law.* Here, clearly she has no lien at all. Our statutes give the *rights of creditors,* and fix the *liability of debtors.* If it be a case sounding in *tort,* or in *contract,* and the debtor *withholds* his property, the body may be taken and committed; and the debtor is entitled to the *prison liberties,* and may apply for the *poor debtor's oath;* and on such application, may be compelled to make full disclosure of his property,

&c.  No court can go beyond these remedies, surely not until the plaintiff has unsuccessfully resorted to them.

3. That the discovery called for cannot be compelled. He who calls for such discovery must have "*an interest*" in the subject matter.  2 *Sto. Eq.* 1490. 1493.  The call here is, not merely for the discovery of enough to satisfy the claim, (in which case it could not be compelled,) but of all the defendant's property and concerns.  Besides, the plaintiff has no *interest* in any thing.  No such application was ever sustained.

Here again, it is fatal that no execution was ever issued; for the plaintiff, has not done all in her power to do.  *Non constat* but on demand made under execution, the debt would have been paid.  *Mitf.* 102.

Again, there is sufficient remedy at law, on the commitment of the defendant, and his application for the oath, as stated above.

4. That no process of *contempt* can be issued.  For, (aside from the impropriety of chancery interfering to compel payment of the judgment of another court,) it would be opposed to the provisions and policy of our laws regarding the collection of debts; for such process would be merely for the collection of a debt.  As above stated, on commitment under legal process, the defendant would be entitled to the *gaol liberties* and the poor debtor's oath; but if committed for contempt, (of the nature of *crime*,) he would have neither. If he cannot be imprisoned for the debt at *law*, he cannot by chancery.  The statutes of the state having prescribed the cases in which the body may be arrested and imprisoned. the *mode* in which it shall be done, and the mode of *deliverance from it*, chancery could imprison only in conformity with those provisions, if at all—never by process of contempt.  Besides, there can be no order for commitment, till a previous specific *order to perform the act*, has been *issued*, *served*, and disobeyed.  2 *Sw. Dig.* 255.  Commitment for contempt, in such cases, has never been practised in this state.  2 *Sw. Dig.* 144. 255.

5. That if the decree of the superior court is not yet complete, the plaintiff is *premature* in her application, for either injunction, discovery or commitment.  As yet there

is no foundation laid for it.    There must first have been a *perfect decree,* and then a *violation* of it.

STORRS, J.    The question whether the plaintiff is entitled to relief or assistance, in this case ; and, if she is, what should be its nature and extent ; must depend on the character of her bill or petition.

The defendant, in the first place, treats this application as an original bill, addressed to a court of equity, the object of which is to obtain the assistance of that court, in enforcing, or enabling the plaintiff to enforce, the judgment of a court of law, rendered merely for a sum of money ; the judgment or decree for alimony on the petition for a divorce, being claimed to be of that character ; and he insists, that the ordinary principles established in chancery with regard to bills of that description, should be held applicable to this case, and are opposed to the claim of the plaintiff for any relief.

The application is not very technically drawn, and would certainly furnish a strong ground for this claim, if the case presented a judgment of an ordinary court of law in her favour for a mere debt or sum of money ; and if that were the proper light in which it should be regarded, we are not prepared to say, that the objections of the defendant, to the interposition of the court to which it is addressed, should not prevail.    Whether, however, in that case, the application should be dismissed, we do not think it necessary to determine, because the plaintiff does not press the application on that ground ; and on looking at the main averments in it, and the general object which the plaintiff manifestly has in view, as derivable from the relief which she professes to seek, we are induced to consider it as what would be termed in a court of law, a motion, or, in a court of equity, a petition, for such interposition as is necessary for the enforcement of the order or decree allowing alimony to the plaintiff, on her petition for a divorce, and, therefore, for the requisite process, in the case in which that order or decree was pronounced, for the execution of such order or decree, rather than as a distinct, independent, original bill in equity, brought in aid of a judgment of a court of law, or of a decree of a court of chancery in another or former suit.    We view the present application only as one for further proceed-

ings in the original suit for a divorce, and as really no more than a continuation of that suit, and therefore, as being no more disconnected from the order or decree which it seeks to enforce, than a motion or petition for an attachment for a contempt, where there is a wilful disobedience of an injunction, or any other order or decree of a court for the performance of a specific act. There are, indeed, several matters contained in the application, which seem to have been suggested, by an expectation or idea of some further contestation of facts between the parties; such as the averments respecting the concealment and fraudulent disposition by the defendant of his property, with a view to elude the performance of the decree for alimony, or defeat its enforcement; and also the prayer, not only for an attachment for contempt, but a disclosure by the defendant of his property, an injunction against any further disposition of it, and an appropriation of it for the satisfaction of that decree : which allegations furnish a colour for the claim of the defendant as to the character of the proceeding.

*Fairfield,*
June, 1851.

Lyon
*v.*
Lyon.

But, in addition to the facts thus alleged and that prayer, it contains a statement of other facts independent of them, with regard to the manner, and motive, and avowed object of such concealment and disposition, accompanied with a petition for an attachment against the defendant as for a contempt of the authority of the court, which, if it is sufficient to warrant its interposition, and is supported by proof, is to be considered as a distinct branch of the application, presenting an independent ground for the exercise of its power, and one which, in our opinion, cannot, with propriety, either as it respects the general administration of justice, or the particular rights of the plaintiff in this case, be disregarded. This application being thus framed, we perceive no good reason why it should receive its technical or distinctive character from the allegations contained in it, which are urged by the defendant, rather than from those relied on by the plaintiff for that purpose, especially, if the latter constitute a valid ground for the interposition of the court to which the application is addressed, and it be true, as claimed by the defendant, that the former are insufficient to warrant any relief or assistance.

The case is, moreover, presented before us, only on its merits,

after a hearing, and finding of the facts, and without any formal or technical exception having been taken, by plea or otherwise, to the mode of instituting the proceeding. Exceptions of that character are now entitled to no favour, even if they would have prevailed, if specially and regularly taken, in an earlier stage of the proceeding. We think, therefore, that this application should be entertained, by the superior court, as a petition, in the case in which that court decreed a divorce and alimony to the plaintiff, for an attachment against the defendant, grounded on his disobedience to that decree in not furnishing such alimony.

The view thus taken by us of the nature of this proceeding, disposes of the plea in abatement, as such, interposed by the defendant, founded, first, on an alleged variance between the application and the copy of it left with the defendant ; and, secondly, on the pendency, when this proceeding was instituted, of an action at law previously brought in the superior court, for the recovery of the sum decreed to the plaintiff as alimony, on her petition for a divorce ; and renders it unnecessary for us to consider whether, if this were an original bill in equity, of the character claimed by the defendant, it ought to be abated, on either of those grounds. The arguments urged in support of that plea, being founded on the claim that this is a bill of the description last mentioned, clearly cannot prevail as an exception of that kind, since it is determined not to be a proceeding of that character, but merely a motion or petition in the original proceeding for a divorce. But although, on such a motion or petition, no such technical exception is known or recognised as a plea in abatement, still, if the facts stated by the defendant in that plea are sufficient to quash such motion or petition, it is but justice to him that he should have the benefit of them for that purpose.

With respect to the variance claimed, it is a mere verbal and immaterial discrepancy between the original and the copy, obviously happening accidentally, which produced no essential change of meaning between them, and which could not mislead the defendant as to the nature or object of the application. On a point of mere practice, (for this is nothing more,) respecting the notice to a party of a motion in a cause to be made by the other, it is hardly necessary to say, that it

should not be set aside for a slip of this trifling character. Indeed, no such variance as this would prevail, even on a plea in abatement, where the question would be one of law, and not, like the present, of discretion.

Nor have we less doubt of the invalidity of the pendency of the action, brought by the plaintiff, on the decree for alimony, to quash this application. If such an action can be sustained, the most that can be said of the remedies sought by the two proceedings, is, that they are merely concurrent; and one, therefore, cannot supersede the other. It might, with as much force, be urged, that an action of debt or a judgment would prevent the issuing of a writ of execution on such judgment; as that the action at law founded on the decree in this case, should defeat this application. Indeed, it is not claimed, by the defendant, that the cases cited by him go to any such extent, or that they are applicable to this proceeding, in the view which we take of it.

We do not deem it necessary to discuss, with any minuteness, the question which has been much argued by the defendant, whether the jurisdiction conferred on the superior court to grant divorces in particular cases, with the other incidental powers respecting alimony, the change of the name of the wife, and the custody of the children of the marriage, is strictly of a legal or equitable nature. The decision of it, in a general form, would, in this case, lead to no profitable result. The jurisdiction on this subject is of a special character, and is given to the superior court generally, without designating, in terms, whether it is to be exercised as a branch of its legal or equitable powers; both of those different kinds of jurisdiction being, in this state, vested in the same judicial tribunal, and administered by the same judges, not distinguished in the exercise of their powers, by any difference of name, or style of address or description. As to the form and manner in which proceedings for divorce are to be commenced and prosecuted, it is very plain, from the act on that subject, that they were intended to be similar to those in suits in equity. *Stat. tit. 7. ch. 2. p. 271.* Indeed, independent of any express statutory regulations, in this respect, it is quite obvious from the nature and object of those proceedings, that such must be the case, since the form of no action or proceeding at law would be

*Fairfield,*
June, 1851.

Lyon
*v.*
Lyon.

appropriate or adequate for the purpose. The decree of divorce, in these cases, by its own force, dissolves the marriage contract and relation between the parties, and leaves them single and unmarried.

In regard to the rights of the parties consequent upon the divorce, to which they may be adjudged to be entitled, where the decree respecting them does not, of itself, operate so specifically as to be the means of its own execution, but is, in order to be effectual, so framed as to require particular acts to be done by one of the parties, it was undoubtedly the intention of the legislature to invest the court, in this as in all other cases, where it has the right to render judgments, decrees and orders, with such power and authority as should be necessary to carry them into full effect. Such power is, from the nature of a judicial tribunal, necessary, and inherent in its very constitution. Without it, it would hardly be invested with the efficiency, or entitled to the respect, even of an advisory tribunal. In carrying their decisions into execution, courts will adopt those processes which are established by precedent, and have thus received the sanction of law, where they are adequate for the purpose, but where they are not, would feel authorized and bound to devise other modes, which should be effectual to that end, being careful, however, not to exceed its constitutional and legal authority. In the present case, however, we do not consider it necessary, if the plaintiff is entitled to the assistance of the superior court, that it should resort to any newly devised means of coercion against the defendant; since no such process has been applied for; and it cannot be anticipated, that the established and ordinary, though, happily, rare mode of proceeding, by attachment for contempt, will not be effectual.

The question then arises, whether it is competent and proper for the superior court, in the present case, to enforce its decree for alimony, by such process of attachment. It appears, that that court passed a decree divorcing the plaintiff from her husband, the defendant, and ordering, that he should pay to her, within the time therein mentioned, and which has long since elapsed, the sum of five thousand dollars, as alimony. It further appears, that he has abundant means at his command for the payment of said sum, but

that he has not only neglected and refused to pay it to the plaintiff, although requested so to do, but that he has, for the purpose of depriving her of her rights under the decree, and preventing its execution, concealed or disposed of his property in such a manner that no part of it can be discovered or reached, in any mode, by the plaintiff. And for this conduct of the defendant no explanation or excuse, if indeed it would admit of any, has been offered. The defendant insists, that this decree stands on the same ground as a judgment of a court of law, or an ordinary decree in a court of equity, for the payment of a mere debt or sum of money, and is to be enforced, as in those cases, in the first instance, only by the accustomed writ of execution, and subsequently, if necessary, by an appropriate resort to a court of equity ; and that an enforcement of this decree, by process of contempt, for a non-compliance with it, would deprive the defendant of the exemption from imprisonment, or, in cases of imprisonment, of the privilege of the oath provided by law for poor debtors, to which he would be entitled on an ordinary writ of execution. That such would be the mode of enforcing an ordinary judgment or decree, in those cases, need not here be controverted. But we are of opinion, as claimed by the plaintiff, that a decree, on the granting of a divorce for the payment of a sum of money to the plaintiff as alimony, is different in its character from those to which it is thus compared by the defendant.

Alimony is a certain part or proportion of the husband's estate, which is allowed and assigned to the wife, upon their divorce. The word alimony is not used, although the idea conveyed by it is clearly embraced, in our statute of divorce, on which the decree in this case was founded, which provides, that "the superior court may assign to any woman so divorced, such reasonable part of the estate of her late husband, not exceeding one third part thereof, as in their discretion, the circumstances of the case will admit." *Stat. tit.* 7. *ch.* 2. *p.* 275. The court does not, under this provision, decree and assign alimony, as a debt due to the wife, or as damages to be paid to her, by her late husband, on their divorce, but as a part or proportion of his estate, fixed by the court, in its discretion, and appropriated to her, and to which she thereupon becomes legally entitled. Such decree

and assignment is specific in its character, and operates as a division or partition, between the husband and wife, of his property, in such proportion as the court, by its decree, determines. Where his property consists of real, or ordinary personal estate, which can be specifically divided, the court will, itself, or by a committee appointed for that purpose, apart to her such portion of his property as is assigned by the decree. Where it consists of property which is not capable of such a division, such as money in his hands, the court determines the sum which the wife shall receive, and directs, that the husband shall pay it to her, within such time as it shall deem reasonable ; and such decree obliges him to perform the act, so directed to be done, specifically. The nature and effect of such a decree is the same as that of an ordinary decree of a court of equity for the specific performance of any other act. As the present case does not require it, we abstain from expressing any opinion as to the legality or propriety of the practice, which has somewhat extensively prevailed, in the superior court, under the provision of the statute which has been mentioned, respecting the allowance of alimony, of directing the payment of a certain sum of money, by the husband, to the divorced wife, where his estate consists of corporeal, tangible property which is capable of a division, in lieu of a literal compliance with the statute, by appropriating to her specifically a particular portion of such estate. Nor would we intimate, that the statute, by a just and equitable construction, does not sanction such practice where the court shall deem it expedient. The decree, in the present case, does not, however, appear to be of that description ; and no objection is, nor do we perceive that any can be, made to its validity.

Such being the character of the decree, in this case, we consider it analogous to those decrees of courts of equity, which enjoin specifically, or prohibit, the performance of particular acts, among which the granting of injunctions is of the most frequent occurrence. In those cases, it is usual with us, to prescribe a penalty for disobedience ; but that is, in many cases, an inadequate or ineffectual provision ; and although until somewhat recently, process for contempt has not been resorted to, in such cases, it is now frequently adopted ; and we not only perceive no objection to it on

principle, but consider it as a most proper and salutary mode of proceeding, where the exigency of the case requires it. That it is one of the established and customary modes of enforcing such decrees of courts of equity as we have just mentioned, is too clear from the treatises on the practice of those courts, as well as the reports, to require the citation of authorities ; and to that practice we think that the superior court should conform, in cases like the present.

The disobedience of the defendant to the decree of that court, in this instance, is palpable, wilful, and utterly inexcusable ; and therefore constitutes, beyond a doubt, what is termed a *contempt*, which is well described, by an eminent jurist, (Judge *Swift*,) who defines it to be " a disobedience to the court, by acting in opposition to the authority, justice and dignity thereof," and adds, that " it commonly consists in a party's doing otherwise than he is enjoined to do, or not doing what he is commanded or required by the process, order or decree of the court ; in all which cases, the party disobeying is liable to be attached and committed for the contempt." 2 *Sw. Dig*. 358.

We therefore advise the superior court, to issue an attachment for contempt, against the defendant, on his not shewing cause to the contrary, on a rule for that purpose.

In this opinion the other Judges concurred.

Attachment for contempt issued. (*a*)

(*a*) As the ulterior proceedings, in this case, may be of general interest, and useful in practice—to the profession at least—I subjoin a statement thereof *ex relatione amici*.

At the term of the superior court, in *October*, 1851, the case, having come back from this court, *Dutton* and *Loomis*, soon after the commencement of the term, moved for *process of contempt* against the defendant. This was resisted, by *Hawley*, his counsel, claiming, that the decision of this court was only, that process should issue, if the defendant refused to disclose, or did not make a satisfactory disclosure. Application was thereupon made to Ch. J. *Church*, and a statement of the decision obtained from him. The counsel for the plaintiff then moved the court to assign a time for the defendant to appear, and shew cause why such process should not issue. The court assigned a day about a fortnight thereafter. Before the day arived, however, the plaintiff's counsel, fearing that the defendant would leave the state, and thus evade the process, drew up an application to the court, stating, that the defendant had, notwithstanding the decision of this court, refused to pay the 5,000 dollars alimony, and had spoken with con-

*Fairfield,*
June, 1851.

Beam
*v.*
Barnum.

## BEAM and another *against* BARNUM.

Where *A* recovered a judgment against the partnership of *B & C*, for more than 700 dollars, after which the parties met in the state of *New-York*, where the debt was originally contracted, and made a compromise of such debt; whereupon *A* gave to *B* a writing, certifying that *A* had received 300 dollars from *B*, in consideration of which *A* released *B* from all claims against him individually, and also as one of the firm of *B & C*; to an action afterwards brought in this state, by *A* against *B*, as surviving partner of *B & C*, to recover said judgment debt, *B* pleaded such release in bar; it was held, 1. that this being a *New-York* transaction, must be governed by the law of that state; 2. that under such law, the release pleaded was effectual to bar the action; 3. that though *B* was discharged from liability in every form, the estate of *C* remained liable.

In this state, a receipt in full, is, in the absence of fraud, mistake, accident or surprise, a good defence in bar.

THIS was an action of debt on judgment. The judgment set forth in the declaration was one rendered by the county

tempt of the court, and its order; had expressed a determination to disobey it; and had used language importing a purpose to go beyond its jurisdiction; to which statement the plaintiff made affidavit. This being presented to the court, the plaintiff prayed, that a writ of *ne exeat* should issue forthwith; claiming, that the defendant might, and probably would, if he knew of the application, immediately place himself beyond the reach of process. This was opposed by the counsel for the defendant; who urged the court to grant him time to look at a proceeding, which, so far as he knew, was without a precedent in this state. But the court (*Hinman*, J., sitting,) said, he thought such a proceeding was *just* and *reasonable.* Thereupon a writ was issued, signed by the clerk, and directed to the sheriff, counting on and setting forth, in substance, the allegations in the application, and stating, that they were verified, by the oath of the applicant. This writ directed the officer to cause the defendant to give a bond, with surety, in the penal sum of 7,000 dollars, payable to such officer, or his successor in office, conditioned that the defendant would not leave the state, without permission of the court; and if he should refuse to give such bond, the officer was thereby directed to commit him to the common gaol in the county, and deliver to the gaoler a certified copy of the writ, with his doings thereon indorsed; and the gaoler was directed to keep him safely, within the prison, until he should give such bond, or be discharged according to law. The officer was also directed to make return to the court of the writ. The sheriff called, the next morning, on the defendant with the writ; and after some hesitation, he gave the bond required. When the day assigned for the hearing arrived, the defendant provided for the payment of the alimony, with interest and costs.