WALTER S. HALLIWELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102470. Promulgated June 18, 1941.

*Charles M. Trammell, Jr., Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

744

HARRON: The first question is whether petitioner is taxable on the income from the 1918 and 1919 trusts which was distributed to his former wife, Anna Bush, in the taxable years. Such income was reported by Anna Bush on her returns for the taxable years and not by petitioner on his returns for those years. Respondent determined that petitioner is taxable on such income "under the provisions of sections 167 and 22 (a) of the existing Revenue Act and in accordance with the principles set forth in the decision of the United States Supreme Court in *Douglas* v. *Willcuts*, 296 U. S. 1."

In his brief respondent contends that petitioner is taxable on the income from the two trusts which was distributed to Anna Bush in the taxable years solely on the ground that in those years petitioner had a continuing obligation to support her. Petitioner contends, on the other hand, that the local law (New Jersey) and the two trusts had given petitioner in the taxable years a full discharge and had left no continuing obligation to support Anna Bush.

As we view the situation, petitioner has shown by clear and convincing proof that in the taxable years he had no continuing obligation to support Anna Bush. At the time of the creation of the 1919 trust, Anna Bush executed and delivered to petitioner a general release in which she released him from "all rights to alimony, dower, thirds and all other rights to which" she might be entitled by reason of the marriage. Petitioner did not "underwrite the principal or income" from the 1918 and 1919 trusts "or make any commitments, contingent or otherwise, respecting them." Compare *Helvering* v. *Fuller*, 310 U. S. 69, with *Douglas* v. *Willcuts*, 296 U. S. 1; *Helvering* v. *Leonard*, 310 U. S. 80; *Alsop* v. *Commissioner*, 92 Fed. (2d) 148; certiorari denied, 302 U. S. 767; *Glendinning* v. *Commissioner*, 97 Fed. (2d) 51. The decree of divorce of the Court of Chancery of New Jersey contained no provision for alimony; and the record does not show that after the decree of divorce any order was made by that court providing for alimony. See New Jersey Stat., Ann., Title 2: 50–37; *Ingraham* v. *Commissioner*, 119 Fed. (2d) 223. Under New Jersey law the court of chancery could not make

any order providing for alimony after the remarriage of Anna Bush, which took place prior to the taxable years. See New Jersey Stat., Ann., Title 2: 50–38; [1] *Alsop* v. *Commissioner, supra,* at p. 149; see also *Estate of William J. Garland,* 43 B. T. A. 731; *Murray Brookman,* 41 B. T. A. 557; *Harry S. Blumenthal,* 34 B. T. A. 994; affd., 91 Fed. (2d) 1009; 53 Harv. L. Rev., pp. 1, 17, 18. The conclusion is inescapable that the New Jersey law and the two trusts had given petitioner a full discharge in the taxable years and had left no continuing obligation to support Anna Bush. *Helvering* v. *Fuller, supra; Ingraham* v. *Commissioner, supra; William H. Stanley,* 41 B. T. A. 1233; *Arthur Letts, Jr.,* 41 B. T. A. 1172; *Estate of William J. Garland, supra.*

In his brief respondent does not contend that petitioner is taxable under the doctrine of *Helvering* v. *Clifford,* 309 U. S. 331, on the income from the two trusts which was distributed to Anna Bush in the taxable years. It is clear that the doctrine of the *Clifford* case is not applicable in the present case. The trusts were for the joint lives of Anna Bush and petitioner and were not short term trusts. The trustee of each trust was a bank. While Anna Bush and petitioner had a joint power to substitute a new trustee of each trust, they could only substitute another bank and not petitioner. Cf. *George H. Deuble,* 42 B. T. A. 277; *Herbert W. Hoover,* 42 B. T. A. 289. The trustee of each trust had full power of investment except that under the 1918 trust the consent of Anna Bush and under the 1919 trust the joint consent of Anna Bush and petitioner was necessary to investment in nonlegal securities. The trusts were irrevocable. Petitioner had no power to withdraw any of the corpora of the trusts. It is true that he did have the power to appoint the corpora of the trusts by will. However the retention of such a power is clearly not sufficient to bring about the application of the doctrine of the *Clifford* case. See *Lady Marian Bateman,* 43 B. T. A. 69.

Nor does respondent contend in his brief that petitioner is taxable on the trust income in question under section 166 or 167 of the applicable revenue acts. Section 166 is not applicable. Petitioner's reversionary interest in the corpora of the trusts in the event of his failure to appoint such corpora by will was not a power to revest title to the corpora in the grantor under section 166. *Helvering* v. *Wood,* 309 U. S. 344. It follows that his power to appoint the cor-

---

[1] 2 : 50–38 *Remarriage of former wife; no order touching alimony; vacation of prior order.*
If after the decree of divorce the wife shall remarry, the court of chancery shall not make any order touching the alimony of such wife except that the court of chancery, upon application of the former husband, on notice and upon proof of the marriage after the decree of divorce, must modify any order or decree touching the alimony of the former wife by vacating and annulling any and all provisions in any such order or decree, or both, directing the payment of money for the support of the former wife.

pora of the trusts by will was not a power to revest title to the corpora in the grantor under section 166. *Lady Marian Bateman, supra.* Section 167 is also not applicable. The trust income in question was required to be paid and was paid to Anna Bush.

Accordingly, it is held that petitioner is not taxable on the income from the two trusts which was distributed to his former wife, Anna Bush, in the taxable years.

The second question is whether petitioner realized taxable gain on the transfer of certain specified securities to his former wife, Lillian de Melinowska, in the taxable year 1938, pursuant to their property settlement in contemplation of divorce and to the divorce judgment of the Superior Court of Connecticut. On his income tax return for the taxable year 1938 petitioner did not report any taxable gain on such transfer of securities. Respondent determined that petitioner realized taxable gain on such transfer of securities in the amount of the difference ($301,848.65) between the cost of such securities to petitioner ($160,038.97) and the value thereof at the time of the transfer ($461,887.62) and that 50 percent of the gain realized, or $150,924.33, was includable in petitioner's gross income, since the securities had been held for over two years.

Respondent contends in his brief that the property settlement and the divorce judgment created a money obligation, in the amount of $462,561, from petitioner to Lillian de Melinowska; that this money obligation was discharged by petitioner's transferring to her securities having a value of $461,887.62 and cash in the amount of $673.38; and that thus petitioner realized taxable gain on the transfer of the securities in the amount of the difference between the cost of the securities to him and the value thereof at the time of transfer. In support of this contention respondent cites, among other cases, *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *William R. Kenan, Jr., Trustee*, 40 B. T. A. 824; affd., 114 Fed. (2d) 217; *Suisman* v. *Eaton*, 15 Fed. Supp. 113; affd., *per curiam*, 83 Fed. (2d) 1019; certiorari denied, 299 U. S. 573; *Twin Ports Bridge Co.*, 27 B. T. A. 346. Petitioner contends in his brief that the property settlement and the divorce judgment did not create a money obligation in the amount of $462,561 from him to Lillian de Melinowska and that the Board's decision in *L. W. Mesta*, 42 B. T. A. 933, is controlling on the second question.

Our decision on the second question is controlled by *L. W. Mesta, supra*, which differs in no material respect from the case presently before us. In the *Mesta* case the taxpayer's wife commenced an action for divorce against him in Pennsylvania. During the pendency of the action the taxpayer and his wife entered into an agreement under which the taxpayer agreed, *inter alia*, to transfer to his wife

5,200 shares of stock of the Mesta Machine Co. and certain other personal property and his wife agreed to surrender all of her rights to support and maintenance and to share in his property at his death. In the taxable year he transferred the 5,200 shares of stock and the other personal property to his wife, and she released him from all of her rights to support and maintenance and to share in his property at his death. The 5,200 shares of stock had a cost to the taxpayer of $7,574.56 and a fair market value of $156,975 at the time of transfer. The decree of divorce did not award any alimony and did not mention the agreement entered into between taxpayer and his wife. Respondent contended that the taxpayer realized taxable gain on the transfer of the 5,200 shares of stock to his wife in the amount of the difference between their cost to the taxpayer and their fair market value at the time of transfer. The Board held that the taxpayer did not realize taxable gain on the transfer of the 5,200 shares of stock. Its decision was based on two grounds. The first ground was that it was impossible to determine the fair market value of the rights received by the taxpayer on the transfer of the 5,200 shares of stock, i. e., the wife's rights to support and maintenance and to share in his property at his death; and that thus it was impossible to compute the amount realized by the taxpayer on the transfer of the 5,200 shares of stock under section 111 (b) of the Revenue Act of 1934. The second ground was that the transaction was merely a "division of property" between the taxpayer and his wife and that it was unreasonable and unjustifiable under general law or under the revenue act to hold that a taxpayer had realized taxable gain by thus giving up a substantial portion of his property.

In the present case, petitioner's former wife, Lillian de Melinowska, in the taxable year 1938 commenced an action against him for divorce and alimony in the Superior Court of Connecticut. Under Connecticut law the Superior Court may provide for alimony by assigning to the wife "a part of the estate of her husband." [2] The Superior Court thus may assign to the wife for alimony a specific part of her husband's property. See *Lyon* v. *Lyon*, 21 Conn. 185. Such an assignment "operates as a division or partition, between the husband and wife, of his property." See *Lyon* v. *Lyon*, *supra*, at p. 198. During the pendency of the action, petitioner and Lillian de Melinowska entered into an agreement providing in effect that, subject to the approval of the Superior Court, a part of his estate, consisting of certain specified securities and a small amount of

---

[2] General Statutes of Connecticut, 1930 Revision—

"Sec. 5182. *Alimony and change of name.* The superior court may assign to any woman divorced by such court a part of the estate of her husband and, in addition thereto or in lieu thereof, may order alimony to be paid from the husband's income, may change her name and may order alimony pendente lite to be paid to the wife in any complaint or cross-bill for divorce pending in said court. *  *  *"

cash, was to be assigned to her as alimony and for the support of their minor child and was to be received by her in full satisfaction of all her claims for her own support and for the support of their minor child. The parties also provided in the agreement that, if any of the specified securities were sold or exchanged between the date of the execution of the agreement and the date of the entry of the judgment of divorce, the proceeds from such sales or exchanges were to take the place of the securities sold or exchanged. At the time when the agreement was entered into, Lillian de Melinowska also executed a release in which she released petitioner from all her rights to share in his estate at his death. In its judgment of divorce the superior court approved the agreement. The court ordered that petitioner was to transfer to Lillian de Melinowska as alimony and for the support of their minor child the specified securities (or the proceeds from the sale or exchange thereof) and the cash agreed upon by the parties and that upon such transfer "of the foregoing securities and cash" he was to be discharged of all obligations to support Lillian de Melinowska or their minor child. It is true that in the agreement the parties referred to the specified securities and cash as having a then value of $462,561 and that in the judgment the Superior Court referred to the specified securities and cash as having an approximate value of $462,561. These references to the value of the specified securities and cash did not convert petitioner's obligation into a money obligation or indebtedness in the amount of $462,561. His obligation was to transfer specified securities (or the proceeds thereof in the event of sale or exchange) and a small amount of cash ($673.38). See *Lyon* v. *Lyon, supra.* That in the present case the agreement was approved and incorporated by the Connecticut court in its judgment while in the *Mesta* case the agreement was not mentioned by the Pennsylvania court in its decree, does not present, in our opinion, any material difference between the factual situations in the two cases.

Both grounds for the decision in the *Mesta* case apply with equal force in the present case. In the present case, it is also impossible to evaluate the rights received by petitioner, i. e., the rights of Lillian de Melinowska to her own support and to the support of their minor child and to share in petitioner's property at his death, and thus to compute the amount realized by him on the transfer of the specified securities and the small amount of cash under section 111 (b) of the Revenue Act of 1938.[3] See *L. W. Mesta, supra,* at p. 940. And in

---

[3] SEC. 111. DETERMINATION OF AMOUNT OF, AND RECOGNITION OF, GAIN OR LOSS.

\* \* \* \* \* \* \*

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

the present case the assignment of a part of petitioner's estate to Lillian de Melinowska also operated as a "division or partition, between the husband and wife, of his property." See *L. W. Mesta, supra,* at p. 941; *Lyon* v. *Lyon, supra,* at p. 198.

*United States* v. *Kirby Lumber Co., supra; William R. Kenan, Jr., Trustee, supra; Suisman* v. *Eaton, supra; Twin Ports Bridge Co., supra,* which are relied on by respondent in his brief, are distinguishable. In each of those cases the transfer of property discharged a money obligation or indebtedness, and not an obligation in kind. See *L. W. Mesta, supra,* at p. 938. Cf. *General Utilities & Operating Co.* v. *Helvering,* 296 U. S. 200. *Helvering* v. *Horst,* 311 U. S. 112, and other cases cited by respondent are not in point.

Accordingly it is held that petitioner did not realize taxable gain on the transfer of the specified securities to his former wife, Lillian de Melinowska, in the taxable year 1938, pursuant to the property settlement and to the judgment of the Superior Court of Connecticut. *L. W. Mesta, supra.*

Reviewed by the Board.

*Decision will be entered for the petitioner.*

OPPER dissents.