INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 35 v. COMMISSION ON CIVIL RIGHTS OF THE STATE OF CONNECTICUT

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 90351

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL 35 v. COMMISSION ON CIVIL RIGHTS OF THE STATE OF CONNECTICUT

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 90352

Memorandum filed March 26, 1954.

*Harold Strauch,* of Hartford, for the Plaintiff.

*William L. Beers,* Attorney General, and *Raymond J. Cannon,* Assistant Attorney General, for the Defendant.

ALCORN, J. Upon motion of the defendant commission on civil rights of the state of Connecticut, hereinafter referred to as the commission, that the plaintiff show cause why it should not be held in contempt, a rule issued and the parties have been fully heard. The parties cited to appear were the plaintiff International Brotherhood of Electrical Workers, Local No. 35, a voluntary association, hereinafter referred to as the union; and also three individuals who are officers of the union.

Two cases as captioned above are involved. Because of identity of issue they have been determined together from the beginning and will be so treated on the present issue. The commission, pursuant to its statutory authority and after hearing, found the union to have engaged in an unfair employment practice, as defined in § 7405 (c) of the General Statutes. That statute, so far as applicable, declared it to be an unfair employment practice "for a labor organization, because of the race, color, religious creed, national origin or ancestry of any individual to exclude from full membership rights . . . such individual . . . unless such action is based upon a bona fide occupational qualification." The commission found, in substance, that the union had excluded Mansfield T. Tilley and Warren B. Stewart from membership because of their race, and that both men were qualified to be accepted into membership. The union appealed to this court where, after hearing, judgment was entered dismissing the appeal and ordering the union to carry out the order of the commission. The union then appealed to the Supreme Court of Errors, which sustained the decision

of this court. *International Brotherhood of Electrical Workers Local 35 v. Commission on Civil Rights,* 140 Conn. 537.

The order of the commission which the judgment of this court directed to be performed was identical with respect to both Tilley and Stewart. It ordered the union in the event that either man "presents himself for admission to membership, you are hereby ordered to cease and desist from excluding him from full membership rights because of his race." The union was further "ordered to cease and desist from failing or refusing to act, both by your executive board and by your membership, upon the application" of either man.

Following the decision of the Supreme Court of Errors sustaining the judgment of this court, both men applied for membership in the union as apprentices. The minutes of the union's executive board disclose that a meeting was held on January 6, 1954, at which it was voted to submit the applications without recommendation to the union for a vote. By letter dated January 16, 1954, counsel for the union advised the applicants of the executive committee action and that the union members would vote at a meeting to be held on January 22, 1954. The applicants were further advised that they might come to the meeting place to learn the result, otherwise the result would be forwarded to them.

The records of the union disclose that a meeting was held on January 22, 1954, at which the application of Tilley, followed by that of Stewart, "was submitted and the vote on the application was unfavorable." No reason for the unfavorable action appears of record. On January 23, 1954, however, counsel for the union notified each applicant by letter of the rejection of his application and added the explanation that it "was based upon the fact that you did

not meet the union's requirement of sponsorship and employment by a union contractor before admission into the union." This was the only explanation relied upon in defense of the present issue of contempt.

The same reason, in substance, constituted the principal defense upon the merits at the original hearing before the commission. The commission considered it and, nevertheless, concluded that the union had excluded the applicants because of race. The same defense was again advanced before this court upon the original appeal, and was, a third time, urged before the Supreme Court of Errors. Both courts considered it and held, nevertheless, that the original conclusion of the commission could not be disturbed.

On the present issue of contempt, therefore, no facts are presented to justify or explain the union's exclusion of these applicants from membership beyond the circumstances which have already conclusively been determined to establish an exclusion because of race. The conclusion inescapably follows that the applicants have, since the judgment of this court, presented themselves for admission to membership and that the union has excluded them because of race. The union is, therefore, in contempt of that part of the judgment of this court which ordered it to carry out the commission's order "to cease and desist" from such exclusion.

Contempt is a disobedience to the rules and orders of a court which has power to punish such offense. *Welch* v. *Barber,* 52 Conn. 147, 155; *Lyon* v. *Lyon,* 21 Conn. 185, 199. "Disobedience or resistance of a lawful order, judgment, or mandate, constitutes a contempt of court." *Ferrie* v. *Trentini,* 111 Conn. 243, 252.

It is clear that the union is not in contempt of the second portion of the order, namely, that it "cease and desist from failing or refusing to act, both by your executive board and by your membership" upon the applications. The meetings already alluded to sufficiently comply with that portion of the order. Likewise, no action by the individual officers now before the court is shown to constitute a contempt.

The contempt is found in the action of the union as a body, as indicated in its action at the meeting of January 22, 1954. The order was directed to the union—not to any of the individual officers now cited in. The evidence discloses that at the meeting of union members on January 22, 1954, the applicants' names were presented. Someone inquired "why we had to vote." The reply was that the Supreme Court forced it. Someone asked what authority the Superior Court had to make them vote. No information was given to the union membership concerning the applicants except their names. Someone inquired whether the applicants were sponsored by one of "our contractors" or had a license from the city of Hartford. The question was answered in the negative. No investigation had been made, however, to determine whether or not the applicants were employed or, if they were employed, by whom. At least some of the members who voted did not know whether the applicants were then working or not. It was known, however, that the applicants were those who had complained against the union resulting in the Supreme Court decision referred to.

An injunction may be violated by indirect, as well as by direct methods and one cannot escape punishment upon the ground that he did not violate the letter, if he violated the manifest spirit of the injunction. *Deming* v. *Bradstreet*, 85 Conn. 650, 658. However else the meeting of January 22, 1954, might be

described, it clearly was not a meeting at which these applicants were excluded from union membership "based upon a bona fide occupational qualification," to refer again to the language of § 7405 (c), General Statutes. As already indicated, the basic facts are no different than they have been throughout, and they have previously been fully adjudicated to establish exclusion because of race. If any new element can be said to have been injected it is a clearly discernible, wilful and inexcusable defiance of the mandate of this court.

The penalty to be imposed rests in the discretion of the court. *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 123. It should be adapted and determined with regard to the circumstances, character, and extent of the violation. *Lawton* v. *Herrick,* 83 Conn. 417, 428. It is material to consider that the order has its source in the effort of the people of this state, through a duly constituted authority, to eliminate from labor relationships the virus of race discrimination; that the subject of discipline in this case is not an individual, but a voluntary association of about 234 members; and that the punishment should serve to emphasize the fundamental principle that a legally established judgment of this court must be obeyed.

Enter judgment in each of the above entitled cases as follows: In case No. 90351: (1) The International Brotherhood of Electrical Workers, Local No. 35, is guilty of contempt and is fined the sum of $1000, to be paid to the state of Connecticut within two weeks from the date hereof, and (2) unless the judgment in this action, dated July 14, 1952, as on file, is complied with on or before thirty days from the date hereof, then The International Brotherhood of Electrical Workers, Local No. 35, is fined the further sum of $250 per week beginning thirty days from the date hereof and payable to the state of

Connecticut each week thereafter until said judgment is complied with.

In case No. 90352: (1) The International Brotherhood of Electrical Workers, Local No. 35, is guilty of contempt and is fined the sum of $1000, to be paid to the state of Connecticut within two weeks from the date hereof, and (2) unless the judgment in this action, dated July 14, 1952, as on file, is complied with on or before thirty days from the date hereof, then The International Brotherhood of Electrical Workers, Local No. 35, is fined the further sum of $250 per week beginning thirty days from the date hereof and payable to the state of Connecticut each week thereafter until said judgment is complied with.