### ELIJAH B. MIDDLEBROOK *vs.* THE STATE.

The punishment of a contempt of court by a fine or imprisonment, is not properly a criminal proceeding.

Such a punishment is no bar to a prosecution for a breach of the peace committed in committing the contempt.

The statute in force previously to the establishment of the Courts of Common Pleas, provided that "every person who shall in the presence of any court behave contemptuously, may be punished by said court, &c." Held to apply to the Courts of Common Pleas when thereafter created.

But the statute is not to be regarded as conferring the power to punish for contempt, but as merely regulating the exercise of an existing power. The power is inherent in all courts.

Where a contempt is committed in the presence of the court, the court has immediate jurisdiction of the person of the offender, and although he leaves the court room and absconds before any action had, yet the court may in his absence sentence him for the contempt.

And the court is not bound to do this at once, but may do it within any reasonable time before the term closes.

And it is not necessary that process be issued for his arrest.

Where in such a case the sentence is one of imprisonment for a certain length of time, it is not necessary that the sentence should state when the term is to begin.

Where, after the flight of the offender in such a case, the court issued an order for his arrest, upon which costs were made, and he was sentenced to imprisonment for a certain length of time and until these costs were paid, it was held to be error so far as the costs were concerned, the making of such cost not being contemplated or provided for by the statute.

But this part of the sentence being separable from the rest, the judgment was affirmed in other respects and reversed as to this.

It may properly be a part of the sentence that costs made in executing it shall be paid by the offender.

WRIT OF ERROR, brought to this court to reverse a judgment of the Court of Common Pleas of Fairfield County inflicting a fine and imprisonment upon the plaintiff in error for a contempt of court. The facts are recited in the judgment of the court below, which was as follows:

*In the matter of*  ⎱ Court of Common Pleas.
*Elijah B. Middlebrook.* ⎰ Fairfield County, April term, 1872.

Be it remembered, that whereas Elijah B. Middlebrook, of the town of Bridgeport, in said county, did, on Wednesday, the 17th day of April, A. D. 1872, at said Bridgeport, in the room of the said Court of Common Pleas, and while said court was in session in said room, Hon. Lyman D. Brewster, Judge, presiding, and in the view and presence of said court while in session, and while William K. Seeley, Esq., of said Bridgeport, an attorney of said court, was making an argument to and addressing said court upon a case then on trial before said court, in which said Elijah B. Middlebrook was plaintiff, and in which the said William K. Seeley was the attorney and counsel for the defendant, behave contemptuously and disorderly, by making a violent and dangerous assault upon the body of said Seeley while so addressing said court as aforesaid, and while the said Seeley was then in the peace being, and did then and there, in the view and presence of said court, throw the said Seeley against the wall of said court house with great force and violence, and then and there beat and injured the said Seeley, whereby the said Seeley received sundry hurts and bruises and was in great danger of serious bodily harm, and the proceedings of said court were interrupted and the due administration of justice prevented, and the authority of said court treated with contempt: And whereas, afterwards, to wit, on said 17th day of April, 1872, an order to show cause was issued from this court, citing the said Middlebrook to appear forthwith before this court and be heard as to what order, judgment and sentence should be made and ordered against him: And whereas, afterwards, to wit, on the 19th day of April, 1872, a warrant in due form of law was also issued, commanding the sheriff of said county and his deputies to arrest the said Middlebrook, and bring

him before this court, to the end that he might be dealt with according to law, and said order to show cause and said warrant were placed in the hands of George W. Lewis, one of the deputies of the sheriff of said county, for service: And whereas, it appears, and this court doth find, from the return of said officer serving said order to show cause and said warrant, that said Middlebrook has absconded so as to avoid being brought before this court to answer to his contempt aforesaid: And whereas it further appears, and this court doth find, that on the 2d day of May, 1872, a process was issued from this court to Isaac M. Sturges, Esq., attorney of record for said Middlebrook, directing said Sturges to appear if he see cause, before this court, on the 3d day of May, 1872, at 9 o'clock in the forenoon, then and there to be heard as to the judgment to be entered up against said Middlebrook for said contempt, which notice was directed to any proper officer or indifferent person to serve and return, and was duly served upon said Sturges, as by the officer's return fully appears: And whereas said Sturges has wholly failed to appear before this court, and be heard as aforesaid: And whereas this court doth find that a fine of one hundred dollars and an imprisonment of thirty days in the common jail in said Bridgeport, will be a reasonable punishment for the contemptuous and disorderly conduct of the said Middlebrook, so done in the view and presence of the court aforesaid: It is therefore considered, ordered and adjudged by this court, that the said Elijah B. Middlebrook pay a fine of one hundred dollars, and costs, taxed and ordered at forty-six dollars and thirty-two cents, to the treasurer of the state of Connecticut, and be imprisoned in the common jail in said Bridgeport for and during the full term of thirty days, and to stand committed in said jail until this said order, judgment and decree is fully complied with, and that warrant of execution issue accordingly. Dated at Bridgeport, this 4th day of May, A. D. 1872. By the court,

W. E. NORTON, Asst. Clerk.

The errors assigned were as follows:

1. That it appears in and by said record that said offence was committed on the 17th of April, 1872, and final judgment

rendered therefor on the 4th of May, 1872; and that the plaintiff in error was not arrested and brought before said court, and was not present, nor was he in view of said court when said judgment was rendered, and was not present in said court at any time after said 17th of April, 1872, and had not legal and sufficient notice to be present and be heard relative to said charge of contempt, or to the judgment to be rendered therein; and said court had not jurisdiction of the person of this plaintiff when said judgment was rendered.

2. That said Court of Common Pleas in and by said judgment adjudged and sentenced the plaintiff in error to pay, in addition to a fine of one hundred dollars, the sum of forty-six dollars and thirty-two cents as costs, and to stand committed in said jail in Bridgeport until said judgment should be fully complied with.

3. That said court ordered and adjudged the plaintiff in error to be imprisoned in said jail for the term of thirty days, and it does not appear in and by said judgment rendered when said term of imprisonment should commence, and said judgment is therefore erroneous.

4. That it does not appear in or by said record that the plaintiff in error was heard, or had an opportunity to be heard, before said court, when he was present before said court, relative to said alleged offence, nor that there was any adjudication of contempt, or any proceedings whatever against him at the time when his said conduct took place, or while he remained in court, nor that said court during that time made any order whatever in relation to the same, but on the contrary it does appear in and by said record that the plaintiff in error had left the court room and was absent therefrom and from said court when the first order relating to said contempt was made.

It appeared from the officer's return upon the warrant for the arrest of Middlebrook, that his fees for travel and assistance in searching for him were $39, and that this sum constituted a part of the costs taxed against Middlebrook and which he was required by the judgment to pay in addition to the fine.

The plea was, nothing erroneous.

*I. M. Seeley* and *D. Davenport,* for the plaintiff.

The record presents the following case: During the trial of a civil suit, in the Court of Common Pleas, Middlebrook, one of the parties to the suit, committed a contempt, in the face of the court, and then left its presence. After ineffectual efforts, both to arrest him, and to give him actual official notice that he was to be punished for the contempt, but after notice to his attorney in the civil suit of such intention on the part of the court, the court proceeded to punish him by imprisonment, and by the full extent of the fine allowed by law, and in addition required him to pay the cost incurred in its efforts to have him arrested. ' These proceedings on the part of the court, we contend, were void.

1. The Court of Common Pleas had no power to punish for contempt committed in its presence. The power to punish for contempt committed in the face of the court possessed by the courts of this country, and especially by those of this state, must not be confounded with that possessed by the English courts. Those courts originated in the common law. Whatever powers they possess are derived from immemorial usage. It is the theory of the English law that the courts are the courts of the King, that he in person presides in them, and that they are the embodiment of his dignity and majesty. Any insult to the court by contemptuous and disorderly behavior in its presence or by libellous and disparaging remarks abroad, is deemed an insult to royalty itself. The power to punish for such contempt is an emanation of the royal authority. *The Queen* v. *Lefroy,* L. Reps. 8 Queen's Bench, 134. The courts of this state are created by the constitution and the statute law. Whatever powers they possess, especially in criminal matters, are conferred upon them by the legislature. Const. of Conn., Art. IV., Sec. 1. Undoubtedly every court has the power to preserve order, even to the extent of confining the disturber till the close of its sitting. But the power to *punish,* to affix a specific punishment to a specific offense, is a criminal power, to be expressly conferred

by the legislature. The power to punish for contempt possessed by any court of the state in 1872 was derived from Sec. 106, p. 261, Gen. Statutes, Rev. of 1866, and from that alone. That statute was passed in 1867, contemporaneously with the establishment of judicial tribunals in the state, and has been re-enacted at every revision of the laws. The act of 1870, creating the Court of Common Pleas for Fairfield County, expressly provided that it should have no jurisdiction whatever over criminal causes. That provision prevented the operation of the section of the General Statutes above referred to. For a contempt committed in face of the court is a criminal cause. It falls within the definition of a criminal cause. It is an offense against the public. It is a breach of a public law for which a specific punishment is prescribed. It can be proceeded against by indictment. It is so classed by text writers.

2. Even if the court possessed the power to punish for contempt, it could assert no jurisdiction over the offender in his absence. The proceeding was directed against the right of personal liberty, an eminently personal right, and simple justice as well as positive law required personal notice to him. The record shows the utter absence of any such notice. The notice to the attorney in the civil case amounted to nothing. In a criminal case there is no warrant of attorney actual or potential. *Prine* v. *Commonwealth*, 18 Penn. S. R., 103. The defendant must be present during all the proceedings in a criminal case in which corporal punishment is or may be inflicted. *Jacobs* v. *Commonwealth*, 5 Serg. & R., 315; *Hall* v. *The State*, 40 Ala., 698; *Wade* v. *The State*, 12 Geo., 25; *State* v. *Blackwelder*, 1 Phill., (N. C.,) 38; *Witt* v. *The State*, 5 Coldw., 11; *Sneed* v. *The State*, 5 Ark., 431; *People* v. *Perkins*, 1 Wend., 91; *State* v. *France*, 1 Overt., 434, 436; *Sargent* v. *The State*, 11 Ohio, 472; *Rose* v. *The State*, 20 id., 31; *Cole* v. *The State*, 5 Eng., 318; *Harriman* v. *The State*, 2 Greene, (Iowa,) 271; *State* v. *Cross*, 27 Misso., 332. This right to be present is personal, inherent, inalienable. The defendant cannot even waive it. *Namaque* v. *The People*, 1 Breese, 109; *Prine* v. *Common-*

*wealth*, 18 Penn. S. R., 103; *The People* v. *McKay*, 18 Johns., 214, 218; *The People* v. *Petry*, 2 Hilton, 523. What is true in all other stages of the case is especially true when the judgment is pronounced. "Judgment cannot be given against any man in his absence for a corporal punishment," said Lord Holt; "he must be present when it is done." The rule laid down by this eminent judge has never been departed from in a single case either in England or the United States. *Rex* v. *Duke*, Holt, 399; *Rex* v. *Harris*, Comb., 447; *The People* v. *Winchell*, 7 Cowen, 525; *The People* v. *Clark*, 1 Parker C. R., 361; *State* v. *Hughes*, 2 Ala., 102; *Hooker* v. *Commonwealth*, 13 Gratt., 763; *The People* v. *Kohler*, 5 Cal., 72. The record must show affirmatively and positively that the defendant was then present. In this case the record shows positively that the defendant was not present. *Hamilton* v. *The Commonwealth*, 16 Penn. S. R., 129; *Dunn* v. *The Commonwealth*, 6 id., 384; *State* v. *Matthews*, 20 Misso., 55; *Scaggs* v. *The State*, 8 Sm. & Marsh., 722; *Safford* v. *The People*, 1 Parker C. R., 474; *Kelly* v. *The State*, 3 Sm. & Marsh., 518; *Eliza* v. *The State*, 39 Ala., 693; *Graham* v. *The State*, 40 id., 660. The principle upon which these numerous decisions rest is apparent. The law is a jealous guardian of the life and liberty of the citizen. It will not allow a step to be taken to deprive him of either without his full personal knowledge, together with an opportunity to allege every extenuating circumstance in his own behalf. There is an additional reason for a strict adherence to this rule in contempt cases. The judge is judge in his own case; the proceedings are summary, and the sentence is final.

3. Not only is the judgment erroneous in being rendered in the absence of the defendant, but in being rendered so long after the commission of the offence. "Contempt can only be visited summarily while the parties are yet in view of the court." *Stockham* v. *French*, 1 Bing., 365; *Ex parte Whitchurch*, 1 Atk., 57; *Clarke's case*, 12 Cush., 320; *Hollingsworth* v. *Duane*, J. B. Wallace, 77. This power of summary proceedings is entrusted to courts mainly for the purpose of

preserving order in court, and to prevent interruption of its proceedings. The imprisonment may be only for the day, and need not be in the common jail. An oral order to the sheriff is all that is requisite. *Wilson's case*, 7 Queen's B., 1016. The fine and imprisonment authorized is not intended as a punishment for the crime committed in violation of the criminal law. That punishment should be sought in a criminal court, where the accused can of right demand, before trial, information of the cause of the accusation, and a trial by jury. *Clarke* v. *May*, 2 Gray, 410. Punishment for the contempt is no bar to a prosecution for breach of the peace in this case, ( *Yates* v. *Lansing*, 9 Johns., 417,) notwithstanding the universal maxim that no one shall be put in jeopardy twice for the same offence. *State* v. *Benham*, 7 Conn., 418. It is the same act done in both cases. Punishment for the contempt, therefore, must be merely a means of enforcing order in court, while the accused is present. If the sentence complained of could be passed seventeen days after the offence was committed, it could be done any number of years after. The statute of limitations has no application to such proceedings. And an offender unable to pay the fine imposed could not be released from prison except by the pardoning power of the legislature.

4. The judgment is defective in that it does not prescribe the time when the imprisonment is to begin. The judgment should be certain in this respect, otherwise it is left to the officer executing the order to determine the time of the commencement of the imprisonment. If the offender had been in court when the sentence was passed, the time of his imprisonment would have then begun. But in the present case he was not in custody, his imprisonment has not commenced, and it is impossible to ascertain from the recorded sentence when it should commence, and it is therefore void.

5. The judgment was void because it required the defendant to pay the costs allowed by the court. The court is prohibited from inflicting a greater fine than one hundred dollars. The statute prescribing the punishment for contempt does not authorize the court to require, nor does it compel the defend-

ant to pay costs.  It is only by virtue of the statute (Gen. Statutes, p. 541, sec. 4) that the defendant in a criminal cause can be required to pay costs, and this requirement is confined to criminal prosecutions in courts of criminal juris- diction.  The Court of Common Pleas has no criminal juris- diction; nor was the proceeding there a criminal prosecution. Costs, where legally assessed, are always a part of the pun- ishment.  *Riley* v. *The State*, 16 Conn., 50.  If this were a criminal prosecution, the accused would be entitled to a trial by jury by the constitution, in a criminal court, upon an information disclosing the nature of his offence.  The original statute of 1667 prohibited in terms any other punishment than that specified in it, and costs were not specified.  Rev. of 1808, p. 231.  The present statute prescribes in terms the precise punishment which may be inflicted, and a prohibition of other punishment would not add to its certainty, or more precisely define its limitation.  The court, therefore, by its sentence inflicted a punishment not authorized by law.  We have examined very many adjudications for contempt, but have not found one in which costs were required to be paid.

*J. H. Olmstead*, State's Attorney, and *W. K. Seeley*, for the State.

1.  The court had the right to render its judgment upon this offense at any time.  *In re Cooper*, 32 Verm., 254; *Seeley* v. *Jobson*, 6 Abbott's Pr. R., 217, note.

2.  The judgment that the offender should pay a fine of $100 and the costs, amounting to $46.32, and to stand com- mitted in jail until the judgment should be complied with, was one within the jurisdiction of the court.  *In re Cooper*, supra; *United States* v. *Duane*, J. B. Wallace, 107.

3.  It was not necessary that the judgment should state when the imprisonment should commence.  It was sufficient that it stated how long it should continue.  *In re Cooper*, supra.

4.  In the case of civil, as contra-distinguished from crimi- nal contempts, it is necessary that the party should be brought into court by attachment, unless he comes in voluntarily, to

the end that he may have an opportunity to show, if he can, that no contempt has in fact been committed. In civil contempts the fact whether a contempt has been committed is to be determined by the court by the evidence of witnesses. *Ex parte Langdon*, 25 Verm., 680, 682. In criminal contempts, committed in presence of the court, it is not necessary that the offender should be arrested or brought into court, or notified to appear to be heard as to the fact of the offense, or the character of the judgment of the court thereon. The court has the power to vindicate its own honor and in its punishment for criminal contempts committed in its own presence, it does simply vindicate itself. It does not attempt or assume to punish the offender for the crime he has committed by his unrighteous violence upon another. It exercises the right of self-preservation, and is not limited to those modes of procedure required by the ordinary forms of criminal proceedings. In a case of criminal contempt committed in the presence of the court, no arrest of the offender before passing judgment is necessary, nor is it necessary that he should hear the judgment or be present when it is rendered. *In re Cooper*, supra; *State* v. *Woodfin*, 5 Ired. Law R., 199; *Holcomb* v. *Cornish*, 8 Conn., 379; *Androscoggin & Kennebec R. R. Co.* v. *Androscoggin R. R. Co.*, 49 Maine, 392, 400; 4 Steph. Com., 404.

5. The court has no power to revise this judgment. The only remedy, had the power of the court been abused, was by impeachment. *Passmore Williamson's case*, 26 Penn. S. R., 18; *Kearney's case*, 7 Wheat., 38.

CARPENTER, J. The plaintiff in error made a gross assault upon William K. Seeley, Esq., in open court, and immediately left the court-house and the state. After making reasonable efforts to procure his attendance in court, the Court of Common Pleas rendered a judgment, sentencing him to pay a fine of one hundred dollars and costs, and to be imprisoned in the common jail for thirty days, for a contempt of court. This writ of error is brought to reverse that judgment.

The questions involved in this case are mainly questions of

jurisdiction; therefore it must not be regarded as a precedent, inducing the belief that in all proceedings for a contempt questions of law will be reviewed by this court as in other cases.

The plaintiff in error claims that the judgment is *coram non judice;*

1. Because the statute expressly denies criminal jurisdiction to the Court of Common Pleas.

This is not a criminal proceeding within the meaning of the statute. The fine and imprisonment which the court is authorized to inflict for a contempt are not intended as a punishment for a crime committed in violation of the criminal law; and punishment for the contempt is no bar to a prosecution for a breach of the peace, notwithstanding the universal maxim that no one shall be put in jeopardy twice for the same offense. Courts of chancery and probate courts have no criminal jurisdiction; and yet it will hardly be denied that they have the power to punish for contempt.

2. It is denied however that the Court of Common Pleas has that power under our statute.

The statute then in force was as follows: "Every person who shall, in presence of any court, either by words or actions, behave contemptuously, or disorderly, may be punished by said court, by fine and imprisonment, as said court shall judge reasonable; but no justice of the peace shall inflict a greater fine than seven dollars, nor a longer term of imprisonment than thirty days; and no other court shall inflict a greater fine than one hundred dollars, nor a longer term of imprisonment than six months."

This is not so much a grant of power as the regulation of the exercise of an existing power. So far as it purports to be an enabling act it is simply declaratory of the common law. But if otherwise, the language, "any court," is comprehensive enough to embrace the Court of Common Pleas. The mere fact that the statute existed before that court was created does not exclude it. The legislature made use of general language for the purpose, as it would seem, of applying the act not only to existing courts but to any that might thereafter be created.

It cannot be presumed that it was intended that justices of the peace should have that power and that the Courts of Common Pleas should not have it. If necessary therefore we should not hesitate to construe the statute as conferring the power.

But independently of the statute we think that the power is inherent in all courts. A court of justice must of necessity have the power to preserve its own dignity and protect itself. *In re Cooper*, 32 Verm., 257; *State* v. *Woodfin*, 5 Iredell, 199; 4 Stephen's Com., 404. Many other cases might be cited to the same point, but it is unnecessary, as we are aware of no authority directly in point to the contrary.

3. It is further objected that the proceeding is erroneous for the reason that the plaintiff was not present in court when the judgment was rendered and that he had not been heard in reference to the matter. It is not averred, nor is it claimed, that he was denied a hearing, or that he had no opportunity to appear and purge himself of the contempt and offer any matter in mitigation that would have been of any avail. It is expressly found that he absconded for the purpose of avoiding this proceeding. It also appears that the court attempted to serve notice upon him to appear and answer, that an attachment was issued and returned *non est*, and that his counsel, in the case which was on trial when the assault took place, was also notified to appear and be heard. All this would be of no avail in a case in which service of process is essential to give the court jurisdiction over the person. But it is important in a case where the court once has full jurisdiction, and the question is not whether it has been acquired, but whether it has been lost. If jurisdiction once attached the court could not be deprived of it by the mere flight of the offender.

We have already seen that the court had jurisdiction over the subject matter. Did it extend over the person also? We think that it did.

The offense was intentionally committed in the presence of the court. When the first blow was struck, that instant the contempt was complete, and jurisdiction attached. It did

not depend upon the arrest of the offender, nor upon his being in actual custody, nor even upon his remaining in the presence of the court. When the offense was committed he was in the presence, and, constructively at least, in the power of the court. He may by flight escape merited punishment; but that cannot otherwise affect the right or the power of the court. Before the court could exert its power, the offender, taking advantage of the confusion, absented himself and went beyond the reach of the court; but nevertheless the jurisdiction remained, and it was competent for the court to take such action as might be deemed advisable, leaving the action to be enforced and the sentence carried into execution whenever there might be an opportunity to do so. If it was necessary that the judgment should be preceded by a trial, and the facts found upon a judicial hearing, as with ordinary criminal cases, it would be otherwise. But in this proceeding nothing of the kind was required. The judicial eye witnessed the act, the judicial mind comprehended all the circumstances of aggravation, provocation, or mitigation; and the fact being thus judicially established, it only remained for the judicial arm to inflict proper punishment.

It will hardly be denied that the court might have done that the instant the offense was committed and before the plaintiff had left the court room. We think it is equally clear that the judge was not bound to do it at once, but might do it within any reasonable time before the term closed. The delay was manifestly for the plaintiff's benefit and in no sense to his prejudice, the time being improved in fruitless attempts to secure his presence in court. It seems reasonably clear that he has no just grounds for complaining of the delay.

Another assignment of error is that the record does not state when the term of imprisonment is to commence.

There is no force in this objection. If in any case this is necessary it cannot possibly be required in a case like this, where the offender is at large, and there is no certainty when, if ever, he will be arrested. Such a requirement would practically nullify the sentence and defeat the end sought to be accomplished.

The only remaining question relates to the costs. It is insisted that it was error in the court to require the plaintiff to pay costs. This objection must prevail. It is apparent from what has already been said 'that there was no necessity for incurring costs in attempting to notify the plaintiff or to bring him into court. Costs unnecessarily incurred cannot justly be taxed against the delinquent.

The statute manifestly does not contemplate any process or any proceedings requiring costs prior to the judgment, and it is silent in respect to the costs. It limits the pecuniary punishment to the sum of one hundred dollars. In some sense costs when properly taxable are regarded as a part of the punishment; and if the delinquent may be required to pay, in addition to a fine of one hundred dollars, costs accruing before the judgment, it practically punishes him beyond the limits allowed by law. It may be otherwise with costs accruing after judgment in attempting to collect the fine. Such costs may be saved by paying the fine.

That part of the judgment therefore is erroneous and must be reversed. But as the judgment is manifestly divisible, that which relates to the costs alone is reversed; and the judgment in respect to the fine and imprisonment, being legal, is affirmed. *State v. Taff*, 39 Conn., 82.

In this opinion the other judges concurred; except FOSTER, J., who dissented.