PLANNING AND ZONING COMMISSION OF THE TOWN OF
MIDDLEFIELD ET AL. *v.* ZEMEL BROTHERS, INC., ET AL.

SUPERIOR COURT      MIDDLESEX COUNTY      FILE No. 20242

Memorandum filed December 27, 1971

*Vincent J. Scamporino,* state's attorney, for the state.

*Belford & Belford,* of New Haven, for the defendants.

LONGO, J. On July 27, 1970, a temporary injunction was issued prohibiting Zemel Brothers, Inc., and its agents, servants and employees, under penalty of $50,000 and subject to other powers of the

court, from allowing or permitting its lands and buildings in the town of Middlefield known as Powder Hill or Powder Ridge ski area to be used for staging, holding, operating or conducting a musical festival or a rock festival or concert on July 31, August 1, and August 2, 1970. *Planning & Zoning Commission* v. *Zemel Bros., Inc.,* 29 Conn. Sup. 45, 66. The civil injunction application was instituted by the Planning and Zoning Commission of the town of Middlefield, Lyman Farm, Inc., Cogingchaug Development Corporation, and twenty-three residents of the town of Middlefield. Hon. Aaron J. Palmer, a judge of the Superior Court, after hearing, concluded in an extensive memorandum that the proposed rock musical festival, if conducted, would interfere substantially with the rights of the general public and should be enjoined as a public nuisance. Id., 58. The court further held that the festival would violate the Middlefield zoning laws and that the plaintiffs would suffer irreparable injury for which they would have no adequate remedy at law unless an injunction was granted. Id., 61, 64.

In spite of the injunction, a large number of young people from throughout the country continued to arrive and remained on the defendants' premises for several days before police action effected a gradual and orderly withdrawal without violence or rioting on the part of the customers. There were many arrests due to drug violations.

On July 28, 1970, Judge Palmer issued a public notice stating that because of widespread and persistent reports that the festival was still on he had appointed Vincent J. Scamporino, the state's attorney for Middlesex County, to supervise the enforcement of the injunction and to investigate a possible violation of the temporary injunction order and prosecute on behalf of the court any contempt proceedings he found warranted. On July 30, 1970, the

state's attorney filed an application for an arrest warrant, alleging that the defendants Zemel Brothers, Inc., and Herman and Louis Zemel disobeyed the temporary injunction order. The court issued an arrest order against those defendants, and they were immediately arrested and released on bail.

The defendants Zemel Brothers, Inc., and Herman and Louis Zemel moved to dismiss the contempt proceeding and to quash the arrest warrant, claiming that the issuance of an arrest warrant prior to an adjudication of contempt was not a proper method of instituting the contempt proceeding and, further, that the warrant was otherwise invalid because of a failure to comply with the statutory requirements for the issuance of a valid arrest warrant. General Statutes § 54-43. On the other hand, the state claims that the issuance of an arrest warrant is proper where the court has designated the state's attorney to institute contempt proceedings. The state further claims that an affidavit is not essential because there is no specific requirement in the constitution, a statute or a rule of procedure in this state concerning criminal contempt.

Contempt is a disobedience to the rules and orders of a court which has power to punish for such offenses. Contempt may be civil or criminal in character. *State* v. *Jackson,* 147 Conn. 167, 168; *Welch* v. *Barber,* 52 Conn. 147, 155; *Huntington* v. *McMahon,* 48 Conn. 174, 196.

A civil contempt is one in which the conduct constituting the contempt is directed against some right of the opposing party, as where an injunction is disregarded or some act required by the court for the benefit of the other party is neglected. In cases of contempt of this sort, the proceeding for its punishment is at the instance of the party interested and is

civil in its character. *Welch* v. *Barber,* supra, 156; *Lyon* v. *Lyon,* 21 Conn. 185; *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121.

A criminal contempt is conduct that is directed against the dignity and authority of the court, and a proceeding for its punishment should conform as nearly as possible to proceedings in criminal cases. When the court has knowledge of the contempt as it occurs, the court will of its own motion proceed to punish the contempt; but when witnesses are required to prove it, the proper course is for some informing officer to bring it to the attention of the court. *Welch* v. *Barber,* supra, 157; *Middlebrook* v. *State,* 48 Conn. 257; *Huntington* v. *McMahon,* supra; see *United States* v. *Barnett,* 376 U.S. 681, 686.

Contempts are neither wholly civil nor altogether criminal. It may not always be easy to classify a particular act as belonging to either one of these two classes. It may partake of the characteristics of both. *Bessette* v. *W. B. Conkey Co.,* 194 U.S. 324, 329.

As stated by the defendants, the form of instituting and conducting a proceeding to punish for civil contempt in the courts of Connecticut is substantially as follows: A petition and motion for an attachment for contempt; an order of notice to the defendant to appear and show cause; notice to the party to appear and show cause; a hearing; the order that an attachment be issued for contempt; and the attachment for contempt. *Gorham* v. *New Haven,* 82 Conn. 153, 156; *Walden* v. *Siebert,* 102 Conn. 353; *International Brotherhood* v. *Commission on Civil Rights,* 18 Conn. Sup. 426. These situations involved violations of injunctions wherein the plaintiffs made an application for contempt, claiming disobedience of the terms of the injunction.

Ordinarily, under the provisions of our constitution, a warrant of arrest for a criminal contempt of court not committed in its presence can issue only upon probable cause supported by written charges preferred on oath or affirmation.

A proceeding for criminal contempt is between the public and the defendant and is not part of the original cause. It is a separate action, one personal to the defendant, with the defendant on one side and the court, vindicating its authority, on the other. *Gompers* v. *Bucks Stove & Range Co.*, 221 U.S. 418, 445. With respect to federal courts, it has been asserted that any contempt proceeding initiated by the court itself must be regarded as criminal in nature and the vindication of the court's authority as well as the punishment of a public wrong. *MacNeil* v. *United States*, 236 F.2d 149, 152.

The court has examined the extensive file of this case and the briefs of counsel and has reviewed the claims of law as to the procedure adopted in obtaining and issuing the arrest warrant. It is admitted that the procedure was unusual and summary in nature. The situation presented to the court in the action to enjoin the defendants against continuing the arrangements for holding the music festival was, however, in the language of Judge Palmer, extraordinary. He characterized the festival as a public nuisance which, if held, would be in violation of the zoning laws of the town of Middlefield. Since he considered the situation a matter of public concern, he appointed the state's attorney to supervise the enforcement of the injunction order, to investigate any possible violations thereof, "and to prosecute on behalf of the court any contempt proceedings he may find to be warranted." The state's attorney acted under the express authority of the court. The wilful violation of an injunction by a party to a

cause is contempt of court constituting a specific criminal offense. Criminal contempts are protective in their nature, and the government, the court and the people are interested in their prosecution. *In re Nevitt,* 117 F. 448, 455. Where the plaintiffs in an original injunction action fail to complain to the court of any violation of the temporary injunction order, the court itself is warranted in causing the issuance of an arrest warrant, since the court is not itself deprived of the right to institute contempt proceedings to vindicate its authority. The scheduled opening of the festival on the following day constituted an exigency which required prompt and effective process to prevent further acts by the defendants in violation of the injunction.

The court is of the opinion that the arrest warrant contained sufficient information from which Judge Palmer could make an independent determination that probable cause existed for the issuance of the warrant. The defendants' claim that the application for the arrest warrant was invalid because it was not supported by any underlying evidence or affidavits is not valid. Where the information or cause on which arrest proceedings in constructive contempt are based is presented by a prosecuting attorney, it has been held that no further verification is necessary, his oath of office being sufficient. *Ex parte Duncan,* 78 Tex. Crim. 447, 449; note, 2 A.L.R. 225, 235. The court further finds that the arrest warrant was issued to punish a reported, wilful act or acts of disobedience of the injunction order in violation of the court's authority. The proceeding is one at law for criminal contempt between the public and the defendants, with the defendants on one side and the court, vindicating its authority, on the other. The defendants are provided with an opportunity to defend by a hearing. The inability of the defendants to render obedience to an order or decree of court,

without fault on their part, as claimed by the defendants, is a good defense to a charge of contempt. 17 Am. Jur. 2d, Contempt, § 51.

The defendants' motion to dismiss the contempt proceedings and to quash the arrest warrant is denied.

Having disposed of the defendants' motion, the court is prompted to observe that the original action and the present contempt proceeding may possibly be considered moot.[1] The combined efforts of the court, the state's attorney, and the police prevented the festival from occurring, and the anticipated danger to the public safety and welfare was, for the most part, averted. Some of the original promoters of the festival have been under criminal investigation in the state of New York. The defendants apparently cooperated with the authorities in the investigation of the financial aspects of the promotion. Many violators of the drug laws were prosecuted by the state's attorney and punished by this court. Recently, the state has promulgated regulations which should render unlikely the staging of similar activities in the future in this state.

---

[1] A nolle prosequi was entered in this contempt proceeding on February 17, 1972.