TYRONE WILSON *v.* DAVID COHEN,
ASSISTANT STATE'S ATTORNEY
(14240)

PETERS, C. J., SHEA, GLASS, COVELLO, BORDEN,
BERDON and SANTANIELLO, Js.

Argued January 14—decision released June 9, 1992

*Monte P. Radler,* assistant public defender, for the plaintiff in error.

*Jack W. Fischer,* deputy assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *David I. Cohen,* senior assistant state's attorney, for the defendant in error.

GLASS, J. The plaintiff in error, Tyrone Wilson (plaintiff), brought a writ of error to this court seeking a reversal of a judgment of the Superior Court, summarily finding him in contempt of court and imposing a sentence of six months imprisonment. The sole issue is whether the plaintiff is entitled to a jury trial pursuant to General Statutes § 54-82b.[1] Because we conclude that the plaintiff is not entitled to a jury trial, we affirm the judgment of the trial court.

[1] Although the plaintiff presents three issues in his brief on appeal, during oral argument before this court the plaintiff's attorney conceded that the sole issue is whether § 54-82b requires that the plaintiff be afforded a jury trial. General Statutes § 54-82b provides in relevant part: "(a) The party accused in a criminal action in the superior court may demand a trial by jury of issues which are triable of right by a jury. There is no right to a trial by jury in criminal actions where the maximum penalty is a fine of one hundred ninety-nine dollars."

The record discloses the following. The plaintiff and Terrence Boyd were charged with the crimes of felony murder, burglary in the first degree and larceny in the third degree. See *State* v. *Boyd,* 214 Conn. 132, 570 A.2d 1125 (1990). The plaintiff agreed to a sentence of twenty years on a plea of guilty to burglary in the first degree. The plaintiff testified at Boyd's trial and Boyd was convicted as charged. This court set aside Boyd's conviction of felony murder on appeal, however, on the ground that the insufficiency of admissible evidence presented at his probable cause hearing deprived the trial court of personal jurisdiction over him. Id., 141. On remand, the trial court held a new probable cause hearing on December 23, 1990, at which the plaintiff was called as a witness. The plaintiff refused to answer any questions posed by the defendant in error, assistant state's attorney David Cohen (defendant). The trial court ordered the plaintiff to answer the defendant's questions and advised him that he could be held in contempt if he refused.[2] Despite the trial court's admonitions, the plaintiff persisted in refusing to testify. The plaintiff stated that he was refusing to answer any questions because he was concerned about his personal safety at the correctional institution where he was incarcerated. The trial court reviewed the various contempt statutes,[3] and informed the plaintiff that

---

[2] The plaintiff's attorney acknowledged that in refusing to testify, the plaintiff was not invoking any fifth amendment rights. The plaintiff also admitted that he had discussed the question of contempt with his attorney.

[3] The trial court reviewed General Statutes §§ 51-33, 51-33a and 51-35.

General Statutes § 51-33 provides: "Any court, including a family support magistrate, may punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner; but no court or family support magistrate may impose a greater fine than one hundred dollars or a longer term of imprisonment than six months or both."

General Statutes § 51-33a provides: "CRIMINAL CONTEMPT. (a) Any person who violates the dignity and authority of any court, in its presence or so near thereto as to obstruct the administration of justice, or any officer of any court who misbehaves in the conduct of his official duties shall be

it believed that General Statutes § 51-33a was applicable. The trial court advised the plaintiff that, pursuant to § 51-33a, the state's attorney would have to decide whether to file contempt charges, which would then be adjudicated by another judge. The trial court then continued Boyd's probable cause hearing until January, 1991.

On January 23, 1991, the trial court, relying on *Moore v. State,* 186 Conn. 256, 440 A.2d 969 (1982), advised the plaintiff that his refusal to testify would constitute summary contempt for which it could impose a sentence of up to six months to run concurrently or consecutively with the sentence that he was then serving. After answering a few preliminary questions posed by the defendant, the plaintiff refused to answer any further questions. The trial court established that the plaintiff did not intend to testify further and that his refusal was based on concern for his personal safety, the same reason that he had given at the previous hearing. The trial court then advised the plaintiff that it would order him to answer the defendant's questions, and that if he refused, it would hold him in contempt of court. The court again advised the plaintiff that it was authorized to impose a sentence of up to six months imprisonment. The plaintiff continued to refuse to testify, and the trial court found him in contempt of court pursuant to Gen-

guilty of contempt and shall be fined not more than five hundred dollars or imprisoned not more than six months or both.

"(b) No person charged with violating this section may be tried for the violation before the same judge against whom the alleged contempt was perpetrated."

General Statutes § 51-35 provides: "(a) Any court or family support magistrate may commit to a community correctional center any person legally summoned who refuses to appear and testify before it in any case, there to remain at his own expense until he so testifies.

"(b) A person shall not be compelled to give evidence against himself, except as otherwise provided by statute, nor shall such evidence when given by him be used against him."

eral Statutes § 51-33.[4] The trial court advised the plaintiff that his refusal to answer any questions despite its order that he do so amounted to summary contempt under *Moore* v. *State,* supra, and that it intended to impose a sentence of six months to run consecutively to his current sentence. After inquiring whether the plaintiff still refused to testify, to which the plaintiff responded affirmatively, the trial court sentenced him to six months incarceration to run consecutively to the sentence he was then serving.

The sole issue presented by this writ of error is whether, pursuant to § 54-82b, the trial court was empowered to impose a sentence in excess of thirty days on a summary contempt charge without providing the plaintiff the right to a jury trial. It is well established that this court's review of a summary criminal contempt proceeding by writ of error is limited to three questions: "(1) whether the designated conduct is legally susceptible of constituting a contempt; *Goodhart* v. *State,* [84 Conn. 60, 63, 78 A. 853 (1911)]; (2) whether the punishment imposed was authorized by law; *State* v. *Jackson,* 147 Conn. 167, 169, 158 A.2d 166 (1960); and (3) whether the judicial authority was qualified to conduct the hearing. *Mayberry* v. *Pennsylvania,* 400 U.S. 455, 465-66, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)." *Moore* v. *State,* supra, 257; see also

---

[4] Before imposing sentence, the trial court gave the plaintiff's attorney an opportunity to present argument on the plaintiff's behalf. Plaintiff's counsel noted the difference between General Statutes § 51-33 and Practice Book § 988, which authorize the trial court summarily to impose a six month sentence when a contempt is committed in its presence, and Practice Book § 993, which provides, with regard to nonsummary contempt, that "[n]o person shall receive a total effective sentence of more than thirty days imprisonment or a fine in excess of ninety-nine dollars unless he has been afforded the right to a jury trial." The plaintiff's attorney requested that the trial court take judicial notice that the plaintiff's fears for his personal safety were well founded. Finally, the plaintiff's counsel stated that if the plaintiff were provided a jury trial, he could raise certain defenses, such as duress, to the contempt charge.

*Jackson* v. *Bailey,* 221 Conn. 498, 500–501, 605 A.2d 1350 (1992); *In re Dodson,* 214 Conn. 344, 346–47, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990).[5] The plaintiff concedes that the writ of error in the present case is limited to the second question.

The plaintiff argues that, pursuant to § 54-82b, the trial court was required to afford him the opportunity for a jury trial. In essence, the plaintiff contends that § 54-82b supersedes § 51-33 to the extent that the latter statute authorizes the *summary* imposition of up to six months imprisonment for a contempt committed in the presence of the court. The defendant argues that the plaintiff's construction of § 54-82b renders § 51-33 meaningless and, therefore, violates basic rules of statutory construction. We agree with the defendant.

Section 54-82b (a) provides that "[t]he party accused in a criminal action in the superior court may demand a trial by jury of issues which are triable of right by

---

[5] "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Contempt may be civil or criminal in character." (Citations omitted.) *State* v. *Jackson,* 147 Conn. 167, 168–69, 158 A.2d 166 (1960). In civil contempt proceedings, "the punishment must be conditional and coercive" and "the contemnor must be in a position to purge himself." (Internal quotation marks omitted.) *Mays* v. *Mays,* 193 Conn. 261, 266, 476 A.2d 562 (1984). In criminal contempt proceedings, on the other hand, "the sanction is punitive in order to vindicate the authority of the court." (Internal quotation marks omitted.) Id. It may not always be easy to classify particular conduct as constituting either civil or criminal contempt, as in any given case, the conduct may exhibit characteristics of both. *Planning & Zoning Commission* v. *Zemel Bros., Inc.,* 29 Conn. Sup. 450, 453, 292 A.2d 267 (1971), citing *Bessette* v. *W. B. Conkey Co.,* 194 U.S. 324, 329, 24 S. Ct. 665, 48 L. Ed. 997 (1904). The conduct for which the trial court held the plaintiff in contempt in this case arguably constituted a civil contempt, in that the plaintiff could have "purged" himself by agreeing to testify. See *Mays* v. *Mays,* supra. Because the plaintiff has not challenged the classification of his conduct as criminal contempt, however, we treat his refusal to testify as a criminal contempt in accordance with our precedent. See *Moore* v. *State,* 186 Conn. 256, 258, 440 A.2d 969 (1982).

a jury." The statute specifically exempts criminal actions for which the maximum penalty is a fine of $199.[6] Section 51-33 authorizes "[a]ny court" to "punish by fine and imprisonment any person who in its presence behaves contemptuously or in a disorderly manner." Under the latter statute, a court's authority is expressly limited, however, to imposing a fine of up to $100 or a term of imprisonment of up to six months or both. A statute providing for the summary punishment of criminal contempt had existed in the state of Connecticut well before § 54-82b was enacted. See, e.g., General Statutes (1888 Rev.) § 843 (allowing any court, except a justice of the peace, to punish by a fine no greater than $100 and by imprisonment for no longer than six months any person who behaves contemptuously or disorderly in the court's presence).

Section 54-82b, by its terms, limits the right to a jury trial to "[t]he party accused in a *criminal action*." (Emphasis added.) The plaintiff argues, therefore, that this court should construe a summary criminal contempt proceeding as a "criminal action" within the meaning of § 54-82b. In so arguing, the plaintiff asks

---

[6] As originally enacted in 1959, the statute provided in pertinent part: "There shall be no right to trial by jury in criminal actions where the maximum penalty is a fine of fifty dollars *or a jail sentence of thirty days,* or both . . . . " (Emphasis added.) Public Acts 1959, No. 28, § 32 (codified as General Statutes § 51-266). In 1987, the legislature deleted the language "or a sentence of thirty days, or both" from the statute. Public Acts 1987, No. 87-241. At the probable cause hearing, the plaintiff's attorney requested that the trial court impose a sentence of thirty days to run consecutively to the sentence that the plaintiff was then serving. The plaintiff appears to concede the trial court's authority summarily to impose a thirty day sentence on the basis that Practice Book § 993, which deals with *nonsummary* contempts, provides that the Superior Court may impose a sentence of up to thirty days without affording the contemnor the right to a jury trial. As the plaintiff states in his brief, "[t]he rule expressed in [§ 993] appears to be an acknowledgment of the statutory right to a jury trial reflected in the version of [General Statutes §] 54-82b (a) which predated Public Act 87-241."

this court to conclude that the legislature, in enacting § 54-82b, impliedly repealed § 51-33 to the extent that it permits a court summarily to punish a contempt committed in its presence.[7] We decline to reach such a conclusion.

"The rule disfavoring implied repeals is a well established principle of statutory construction. . . . The legislature is presumed to have acted with the intent to create a consistent body of law. . . . If two statutes appear to be in conflict but can be construed as consistent with each other, then the court should give effect to both. . . . [E]nactments by the General Assembly are presumed to repeal earlier inconsistent ones to the extent that they are in conflict. . . . Because repeal by implication is generally disfavored, however, the principle applies only when the relevant statutes cannot stand together. . . ." (Citations omitted; internal quotation marks omitted.) *Dugas* v. *Lumbermens Mutual Casualty Co.*, 217 Conn. 631, 641, 587 A.2d 415 (1991).

The plaintiff relies on *Bloom* v. *Illinois*, 391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968), in support of his argument that the distinctions between summary criminal contempt proceedings and criminal prosecutions are artificial and, therefore, a summary criminal contempt proceeding should be deemed a "criminal action" within the meaning of § 54-82b. In deciding whether a contemnor summarily sentenced to more. than six months imprisonment had a constitutional right to a jury trial, the United States Supreme Court in *Bloom* analogized criminal contempt proceedings to criminal prosecutions. The court referred to criminal

---

[7] The plaintiff conceded at oral argument that in order to conclude that General Statutes § 54-82b applied to summary criminal contempt proceedings, this court would have to overrule a long line of cases. See, e.g., *Middlebrook* v. *State*, 43 Conn. 257, 267 (1876); *State* v. *Jackson*, 147 Conn. 167, 169, 158 A.2d 166 (1960); *Moore* v. *State*, 186 Conn. 256, 259, 440 A.2d 969 (1982).

contempt as "a crime in the ordinary sense" and "in every fundamental respect," stating that "convictions for criminal contempt are indistinguishable from ordinary criminal convictions . . . ." Id., 201.

Similarly, this court long ago concluded that a criminal contempt proceeding should conform as nearly as possible to proceedings in criminal cases. *Welch* v. *Barber,* 52 Conn. 147, 157 (1884); see also *McTigue* v. *New London Education Assn.,* 164 Conn. 348, 356, 321 A.2d 462 (1973). We have nonetheless previously rejected an argument akin to that made by the plaintiff in the present case. In *State* v. *Jackson,* supra, the defendant, an attorney who had been summarily punished for a contempt committed in the presence of the court, claimed to have a right of appeal pursuant to General Statutes (1958 Rev.) § 54-12, which provided that "[a]ny person convicted . . . by any municipal court of any offense may . . . appeal from the judgment . . . to the . . . court of common pleas . . . ." The defendant argued that contempt of court was an "offense" within the meaning of § 54-12. This court rejected the defendant's argument, stating: "The word 'offense' in § 54-12 . . . must be construed as meaning 'criminal offense.' *When the defendant was fined for a contempt committed in the presence of the court, he was not convicted of a criminal offense within the meaning of § 54-12.*" (Emphasis added.) *State* v. *Jackson,* supra, 170. We likewise conclude that a summary criminal contempt proceeding is not a "criminal action" within the meaning of § 54-82b.

"Criminal contempt is conduct which is directed against the dignity and authority of the court. In such a case, the court may punish the offender on its own motion, without the presentation of any charge, formal or otherwise, and solely upon facts within its own knowledge. When the offense is committed in the presence of the court, punishment may be imposed at once.

This power inheres in, and is essential to, any court, in order that it may be enabled to administer justice." Id., 169. This court has repeatedly stated that "[i]*n this class of contempt, the proceedings are criminal in nature but do not constitute a criminal prosecution.*" (Emphasis added.) Id.; see also *State* v. *Howell,* 80 Conn. 668, 671, 69 A. 1057 (1908); *Middlebrook* v. *State,* 43 Conn. 257, 267 (1876). Rather, criminal contempt proceedings "are for an offense against the court as an organ of public justice and not for a violation of the criminal law." *State* v. *Jackson,* supra; see also *Goodhart* v. *State,* supra, 63.

Our conclusion that § 54-82b does not apply to summary criminal contempt proceedings conducted pursuant to § 51-33 permits the two statutes to "stand together" in accordance with established rules of statutory construction. See *Dugas* v. *Lumbermens Mutual Casualty Co.,* supra. At common law, a party accused of contempt was not entitled to a jury trial. *Bloom* v. *Illinois,* supra, 196. This court adhered to this long established principle in *Huntington* v. *McMahon,* 48 Conn. 174, 201 (1880).[8] While the United States Supreme Court in *Bloom* v. *Illinois,* supra, created a *constitutional* right to a jury trial for criminal contempt where the punishment imposed exceeds six months imprisonment, the common law principle still applies to contempts that qualify as "petty offenses," a category consisting of crimes carrying a sentence of six months or less. *Jackson* v. *Bailey,* supra, 505–506, cit-

[8] In *Huntington* v. *McMahon,* 48 Conn. 174 (1880), this court upheld the trial court's refusal to allow a jury trial on a contempt charge. This court stated: "We are not aware of any case in this state or elsewhere in which it has been held that a party accused of contempt is entitled to a trial by jury. The contrary has been repeatedly held. . . . It would seem to be necessary that the court should have the power to judge of all questions of this nature. The power to protect the dignity of the court might hang by a slender thread if it was made subject to the uncertainties of a jury trial." (Citations omitted.) Id., 201.

ing *Codispoti* v. *Pennsylvania,* 418 U.S. 506, 512, 94 S. Ct. 2687, 41 L. Ed. 2d 912 (1974). As this court has stated: "So long as the punishment [for a criminal contempt] is kept within the six-month term provided by § 51-33, the court's jurisdiction to impose such punishment summarily is clear." *Jackson* v. *Bailey,* supra, 503; see also *Moore* v. *State,* supra, 259. We discern no persuasive reason to depart from this well established principle of our jurisprudence.

The plaintiff also claims a violation of the equal protection clause of the fourteenth amendment to the United States constitution,[9] in that our statutes and rules of practice provide disparate treatment for summary and nonsummary contempt with respect to the right to a jury trial. Although the plaintiff's attorney alluded to the differential treatment of summary and nonsummary contempt proceedings at the probable cause hearing, he did not distinctly raise a claim that these differences constituted a violation of the plaintiff's constitutional right to equal protection under the law.[10] The defendant contends that this court should decline to address the plaintiff's claim because it was

---

[9] Article fourteen, § 1 of the amendments to the United States constitution provides in relevant part: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[10] Assistant public defender Monte Radler commented as follows to the trial court on the different treatment of summary and nonsummary contempts:

"Mr. Radler: . . . I'm looking also through the contempt statutes to find out what in fact is the appropriate punishment. And the statute 51-33 as well as the Practice Book sections regarding summary contempt proceedings, empower a court to sentence an individual up to six months. However, under the nonsummary contempt statutes, there is section 993 which indicates that no person shall receive a total effective sentence of more than thirty days imprisonment or a fine in excess of ninety-nine dollars, unless he has been afforded the right to a jury trial.

"Mr. Wilson, under these current circumstances, does not have the right to a jury trial. The authority who comment on that particular Practice Book sections, says it is unclear whether that limitation applies to summary contempt proceedings."

not properly preserved nor is it of constitutional magnitude. The defendant argues, alternatively, that should this court review the plaintiff's equal protection claim, he cannot prevail under the criteria set forth in *State* v. *Golding,* 213 Conn. 233, 238–42, 567 A.2d 823 (1989).

In *Golding,* we clarified the standard for appellate review of unpreserved constitutional claims that this court had set forth in *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973). We held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 239–40.

Applying the first criterion to the present case, we conclude that the record is adequate to review the plaintiff's claim. Despite the fact that the plaintiff's argument at the probable cause hearing, regarding the different procedures for summary and nonsummary contempt, raised no constitutional concern, the transcript indicates that the trial court imposed a sentence of six months imprisonment pursuant to § 51-33. Thus, the plaintiff's failure to articulate an equal protection claim before the trial court does not detract from the sufficiency of the record to review such a claim on appeal.

With respect to the second criterion, the plaintiff's claim facially satisfies the requirement that the unpreserved claim be of "constitutional magnitude alleging the violation of a fundamental right." Id., 239.

The plaintiff claims that his right to equal protection of the laws was violated because there is no rational basis for distinguishing between summary and nonsummary contempt for purposes of punishment. This is not a "patently nonconstitutional claim" nor one "masquerading" as a constitutional claim. Id., 240, 241. In determining whether the second *Golding* requirement is satisfied, we do not evaluate the merits of the claim, except to determine whether the claim is frivolous.

Having surmounted the threshold requirements for review of the plaintiff's equal protection claim pursuant to the first two criteria in *Golding,* the plaintiff is entitled to a determination of the merits of his claim under the third criterion. Id., 241. The plaintiff concedes that the applicable standard for review of his claim is whether there is any rational basis for the difference in the maximum punishment that may be imposed without affording an alleged contemnor a right of jury trial: six months when the court acts summarily, pursuant to § 51-33 and Practice Book § 988, for a contempt occurring in its presence, and a fine of $199, as limited by § 54-82b, when the same contemptuous conduct is prosecuted nonsummarily pursuant to § 51-33a and Practice Book § 993. The plaintiff argues, however, that there is no reasonable ground for subjecting a contemnor to such disparate punishments for the same conduct occurring in a courtroom, depending on the "whim" of the court or, if a proceeding is to be instituted under § 51-33a, also that of the prosecutor.

The defendant argues that no such disparity exists because "nonsummary contempt concerns conduct that does not occur in the presence of the court." That argument, however, overlooks the plain language of § 51-33a, which authorizes a nonsummary criminal contempt proceeding for "[a]ny person who violates the dignity and authority of any court, in its presence . . . ." It also ignores the authority conferred upon

the court by Practice Book § 989[11] to defer proceedings for contempts occurring during a trial until after the trial is completed, when the adjudication must be nonsummary pursuant to an information. Practice Book § 991.[12]

We conclude, nonetheless, that, even when the identical contemptuous conduct is involved, there is a rational basis for the distinction made in the statutory scheme with respect to the punishments available for contempts occurring in the presence of the court that are adjudicated summarily, rather than in a nonsummary proceeding, which affords a right of jury trial if the punishment is to exceed $199. When the contempt is based upon the unlawful refusal of a witness to answer proper questions during a criminal trial, as in this case, there is an overwhelming necessity for empowering a court to adjudicate the contempt summarily and to impose punishment sufficiently substantial to cause the witness to reconsider and deter such conduct by others. The trial court should not be compelled to suspend the proceeding to await the outcome of a fullblown criminal prosecution for the contempt with an attendant right of jury trial, and a mistrial would raise double jeopardy concerns. *United States* v. *Wilson*, 421 U.S. 309, 318–19, 95 S. Ct. 1802, 44 L. Ed. 2d 186 (1975). " 'The power to fine and imprison for contempt, from the earliest history of jurisprudence,

---

[11] Practice Book § 989 provides in part: "Where the interests of orderly courtroom procedure and substantial justice so dictate . . . the judicial authority should defer institution of contempt proceedings until after the trial is completed, and the proceedings should be conducted pursuant to Sec. 990 [Criminal Contempt—Nonsummary Contempt]."

[12] Practice Book § 991 provides: "A criminal contempt not adjudicated under Sec. 987 [Criminal Contempt—Summary Contempt] shall be prosecuted by means of an information. The judicial authority may, either upon his own order or upon the request of the prosecuting authority, issue an arrest warrant for the accused. The case shall proceed as any other criminal prosecution under these rules and the General Statutes."

has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge.' " *United States* v. *Barnett,* 376 U.S. 681, 699–700, 84 S. Ct. 984, 12 L. Ed. 2d 23, reh. denied, 377 U.S. 973, 84 S. Ct. 1642, 12 L. Ed. 2d 742 (1964), quoting *Watson* v. *Williams,* 36 Miss. 331, 341 (1858). When a witness refuses to testify at a trial in obedience to a court order, "summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify." *United States* v. *Wilson, supra,* 316.

The absence of any similar necessity when a contempt, whether or not occurring in the presence of the court, is prosecuted in a nonsummary proceeding, permits the ordinary criminal procedure to be followed in adjudicating the contempt, including the right of jury trial if a punishment greater than a fine of $199 is sought. Because we conclude, therefore, that there is a rational basis for the distinction made by our statutes and rules of practice with regard to summary and nonsummary contempt proceedings, the plaintiff cannot prevail on his unpreserved equal protection claim. *State* v. *Golding, supra,* 239–40.

The judgment is affirmed.

In this opinion PETERS, C. J., SHEA, COVELLO, BORDEN and SANTANIELLO, Js., concurred.

BERDON, J., dissenting. I am concerned about a matter that unfortunately counsel has failed to raise—that is, whether the refusal by the plaintiff in error, Tyrone Wilson (plaintiff), to testify constituted criminal contempt under General Statutes § 51-33. The majority recognized this concern in footnote 5 wherein it stated that the failure of the plaintiff to testify could "arguably" have constituted a civil contempt.

General Statutes § 51-35 fits the glove of this case and preempts § 51-33. Section 51-35 provides in relevant part: "Any court . . . may commit to a community correctional center any person legally summoned who refuses to appear and testify before it in any case, there to remain at his own expense until he so testifies. . . ." "It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of the same or another statute which might otherwise prove controlling. . . ." (Citation omitted; internal quotation marks omitted.) *Plourde* v. *Liburdi,* 207 Conn. 412, 417, 540 A.2d 1054 (1988); *State* v. *Daniels,* 207 Conn. 374, 393, 542 A.2d 306, appeal after remand, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989).

Moreover, we have held under a similar statute "that an order of commitment for failure to testify is not a punishment for breach of a criminal law, but is a means adopted by a court to compel obedience to its lawful orders, and its termination may properly be conditioned upon the performance of the act required." *McCarthy* v. *Clancy,* 110 Conn. 482, 500, 148 A. 551 (1930).

This matter goes to the heart of our criminal justice system—whether the plaintiff stands convicted under a criminal statute that, as a matter of law, has no applicability to him. Indeed, the failure to raise such an issue is plain error. Practice Book § 4185;[1] see *Persico* v. *Maher,* 191 Conn. 384, 403–404, 465 A.2d 308 (1983).[2] Since this is such a fundamental issue that

---

[1] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

[2] " 'While we are not "bound to consider" such claims of error, and do not ordinarily do so, we have upon occasion considered a question which

affects the liberty of the plaintiff, I would remand this matter to the attorneys with direction to brief the issue of whether the plaintiff's refusal to testify constituted criminal contempt under § 51-33 and, thereafter, order oral argument on the issue. Furthermore, it is an issue that is of great importance to the bench and bar that should be clarified.

was not so raised, not by reason of the appellant's right to have it determined but because in our opinion in the interest of public welfare or of justice between individuals it ought to be done.' " *Persico* v. *Maher,* 191 Conn. 384, 403, 465 A.2d 308 (1983), quoting *Leary* v. *Citizens & Manufacturers National Bank,* 128 Conn. 475, 478–79, 23 A.2d 863 (1942).